IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARK LANASA, M.D., Ph.D., | * |
| Plaintiff, | * |
| v. | * Case No. 8:22-cv-01399-DLB |
| ASTRAZENECA PHARMACEUTICALS LP, | * |
| Defendant. | * |

**PLAINTIFF MARK LANASA'S MEMORANDUM IN OPPOSITION
TO DEFENDANT ASTRAZENECA'S MOTION TO DISMISS**

Plaintiff Mark Lanasa, M.D., Ph.D. ("Plaintiff" or "Dr. Lanasa"), by and through his undersigned counsel, hereby files this Opposition to Defendant AstraZeneca Pharmaceuticals LP's ("Defendant" or "AstraZeneca") Motion to Dismiss.

## I.   INTRODUCTION

Defendant AstraZeneca, without legal justification, unlawfully withheld Dr. Lanasa's earned bonus for fiscal year 2021. Dr. Lanasa met all conditions necessary to receive his full target bonus for the 2021 fiscal year, including working throughout the entire bonus period. Nevertheless, Defendant failed and refused to pay the earned bonus after Dr. Lanasa resigned from his position in early 2022. The only reason Defendant has proffered for failing or refusing to pay Dr. Lanasa's bonus is that Dr. Lanasa was no longer employed on the date the bonus was paid. This is a legally-insufficient justification for failure to pay earned wages under prevailing and long-settled Maryland law.

Plaintiff initiated this action alleging violations of the Maryland Wage Payment and Collection Law ("MWPCL") (Count I), Breach of Contract (Count II), and Quantum

1

Meruit/Unjust Enrichment (Count III) to recover all wages unlawfully withheld. On June 15, 2022, Defendant filed its Motion to Dismiss (the "Motion") Plaintiff's Complaint. ECF 8.

Defendant first argues that Plaintiff's MWPCL claim should be dismissed because Plaintiff's bonus does not constitute a "wage" under the MWPCL and because he was not employed on the date the bonus was paid. These assertions are not well-founded. The MWPCL explicitly lists a "bonus" under the definition of what constitutes a "wage." Moreover, Defendant's "Continued Service Requirement" is void and unenforceable as a matter of public policy in Maryland.

Defendant next argues that Plaintiff's Breach of Contract claim should be dismissed because there is no contract between the parties related to Plaintiff's bonus. Defendant is incorrect. Plaintiff's employment agreement constitutes a contract to pay Plaintiff a bonus so long as he satisfies the conditions for that award, including performance and working through the entire bonus period.

Finally, Defendant argues that Plaintiff's Quantum Meruit/Unjust Enrichment claim should be dismissed because Plaintiff has failed to allege all the elements of unjust enrichment and because Plaintiff alleges the existence of a contract between the parties. First, as demonstrated below, Plaintiff has alleged ample facts sufficient to support his claim for unjust enrichment. Second, it is axiomatic that Plaintiff may allege alternative causes of action and Defendant argues that the employment agreement between the parties was *not* a contract to pay Plaintiff a bonus.

## II. STATEMENT OF RELEVANT FACTS

Dr. Lanasa began working for AstraZeneca in 2017 with the title Senior Director, Study Division pursuant to the terms of a written employment agreement, dated May 11, 2017 (the "May 2017 Employment Agreement"). Compl. ¶ 4. In addition to his base salary, Dr. Lanasa was

2

eligible to participate in the AstraZeneca Incentive Plan (AZIP) which set his target bonus at 40% of his annual base salary of $300,000.00. *Id.* For 2017 and 2018 Plaintiff received his full target bonus. Compl. ¶ 5.

In December 2018, Dr. Lanasa was promoted to Vice President, Global Development Lead, Immuno-Oncology. Compl. ¶ 8. On about December 21, 2018, Dr. Lanasa and AstraZeneca executed a new employment agreement (the "December 2018 Employment Agreement"). *Id.* The December 2018 Employment Agreement included an annual base salary of $343,200.00 and a target bonus of 45% of Dr. Lanasa's annual base salary. *Id.* Plaintiff received his full target bonus for 2019 and 2020 (each paid in March of the year following the year in which the bonus was earned). Compl. ¶ 10.

On January 21, 2022, after completing the 2021 work year, fully and satisfactorily performing, and doing everything necessary to earn his bonus, Plaintiff accepted a position at another company and announced his resignation, effective February 4, 2022. Compl. ¶ 12. On March 15, 2022 – the date on which Dr. Lanasa expected to receive his 2021 bonus – Defendant failed and refused to pay Dr. Lanasa's earned bonus without legal justification. *Id.* When Plaintiff protested that he had not received his bonus, Defendant contended that depriving Dr. Lanasa of his earned wages was justified because he was not employed with Defendant as of the date of payment. *Id.* Defendant claimed that it had changed its policy to exclude from bonus eligibility employees no longer employed on the date of payment – even where those employees met all conditions necessary for a bonus. *Id.* At no time during his employment was Dr. Lanasa ever informed of any change in Defendants' short-term incentive plan, including any requirement that an employee maintain employment through the date of payment in order to receive an earned bonus. *Id.*

On information and belief, the bonus for 2021 included a "multiplier" of 1.64, reflecting the banner year enjoyed by Defendant, so that the amount of the 2021 bonus earned by Plaintiff per the terms of the December 2018 Employment Agreement was approximately $273,060.00 (45% x $370,000.00 = $166,500.00 x 1.64 = $273,060.00). Compl. ¶ 13.

## III.   LEGAL STANDARD

"A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint." *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, 2020 U.S. Dist. LEXIS 47337, at *13 (D. Md. Mar. 17, 2020). To survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating a 12(b)(6) motion to dismiss, "[t]he court accepts the well-pled allegations of the complaint as true and construes all facts and reasonable inferences most favorably to the plaintiff." *Flournoy*, 2020 U.S. Dist. LEXIS 47337, at * 13. A complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.   ARGUMENT

### A. Plaintiff's MWPCL Claim Must Survive Defendant's Motion to Dismiss

1. <u>Dr. Lanasa's Bonus is a "Wage" Under the MWPCL</u>

The MWPCL explicitly defines "wage" to include "a bonus." Md. Code Ann., Lab. & Empl. § 3-501(c)(2)(i); *see also Blanch v. Chubb & Sons, Inc.*, 2017 U.S. Dist. LEXIS 152673, at *7 (D. Md. Sept. 20, 2017) ("[B]onuses . . . fall under the definition of "wage" in the MWPCL.").

A bonus qualifies as a wage where it "formed part of the inducement for his initial and continuing employment." *Medex v. McCabe*, 811 A.2d 297, 304 (Md. Ct. App. 2002).

Here, Dr. Lanasa's bonus qualifies as a "wage" under the MWPCL because it constituted part of the inducement for his initial and continuing employment. *See id.* Dr. Lanasa's "target bonus" under the December 2018 Employment Agreement was 45% of his annual salary, which made up nearly one-third of his total annual compensation. As such, the bonus constituted an integral portion of Dr. Lanasa's total compensation, without which he likely would not have accepted AstraZeneca's offer of employment. *See In re Nat'l Energy & Gas Transmission, Inc.*, 351 B.R. 323, 331-32 (Md. Bnkr. 2006) (finding bonuses constituted wages where the employees' offer letters explicitly included language regarding participation in the employer's incentive plan).

AstraZeneca's mere labeling of Dr. Lanasa's bonus as "discretionary" is not sufficient to transform the bonus into something other than wages. In *In re Nat'l Energy & Gas Transmission, Inc.*, for example, the employers cited "numerous exhibits where the [bonus] program was labeled 'discretionary,'" but merely calling a bonus 'discretionary' does not allow an employer to deny a bonus "for any reason whatsoever, no matter how arbitrary or unreasonable." *Id.* at 332-33. While AstraZeneca did label its bonus as "discretionary," it also set a target amount, based the actual award on performance, provided guidelines to managers for determining award amounts, and established multiple committees tasked with administering the bonus plan. Under these circumstances, AstraZeneca cannot simply deny Plaintiff his earned bonus for any reason it desires. Instead, it may only exercise its discretion to deny Plaintiff a bonus for reasons permitted in the AZIP and consistent with Maryland law.

AstraZeneca has provided no permissible reason, under the AZIP or Maryland law, for denying Dr. Lanasa a bonus. Here, the *only* reason AstraZeneca has proffered for its failure to

award a bonus is that Dr. Lanasa was no longer employed on the date the bonus was paid, despite meeting all other conditions for an award.[1] As set forth is section IV.A.2. *infra*, such a reason for denial of a bonus is contrary to the law in Maryland and void for public policy.

2. <u>Defendant's Continued Service Requirement is Void for Public Policy</u>

Ignoring clear judicial precedent, AstraZeneca argues that Dr. Lanasa is not entitled to his earned bonus because he was not employed on the date the bonus was paid (the "Continued Service Requirement"). In fact, AstraZeneca's Continued Service Requirement cannot be enforced in Maryland because it is void for public policy.[2]

Under the MWPCL, employers must pay departing employees "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a). "Restated simply, where an employee earns wages under the Act, the employer must pay them, regardless of the ensuing termination of the employee." *Medex*, 811 A.2d at 305 (stating that the MWPCL makes no distinction between employees who leave voluntarily or involuntarily, "giving equal protection to all departed employees."). Moreover, "[c]ontractual language between parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts." *Id.* at 304. "[O]nce an employee does everything required to earn the wages, his right to receive the wages vests and cannot be withheld because employment is terminated prior to the date of payment." *Blanch*, 2017 U.S. Dist. LEXIS 152673, at *7.

---

[1] It is telling Defendant does not contend that, based on Plaintiff's and/or the company's performance ***or any other factor other than the fortuitous timing of his resignation*** prior to the payout date (ignorant of any change in the AZIP that would make the timing problematic) Plaintiff had not earned his bonus.

[2] Plaintiff does not seek to invalidate the Continued Service Requirement as it may be applied in any other country or jurisdiction. However, settled law clearly invalidates this provision with respect to a Maryland resident who performed all of his work and earned his bonus in Maryland, as Dr. Lanasa did.

6

AstraZeneca's argument that Plaintiff must be employed to receive his earned wages, because this is what is required by the terms of the revised AZIP, is the exact argument that was rejected in *Medex* as "lead[ing] to results that are both unreasonable and illogical." *Medex*, 811 A.2d at 305. Moreover, AstraZeneca's Motion does not cite a single authority supporting its argument that it can refuse to pay a bonus merely because an employee is no longer employed on the date the earned bonus is paid. In support of this argument, AstraZeneca cites only three cases, none of which are applicable to the instant case. First, Defendant cites *Martignetti v. IBM Corp.*, 855 Fed. Appx. 857 (4th Cir. 2021), which is inapposite. There, the employer retained the right to adjust the amount of all commission payments, including commission payments that would have been "disproportionate." *Id.* at 859. Contrary to Defendant's erroneous assertion, there was no allegation in *Martignetti* that the employer withheld the plaintiff's wages solely because he left his employment prior to the payout date. *Id.*

Defendant next relies on *Gordon v. Serv. Of Am.*, 120 F.3d 261, 1997 U.S. App. LEXIS 27358 (4th Cir. July 23, 1997), a case that pre-dates the controlling *Medex* opinion. *Gordon* is inapplicable here, because the plaintiffs in that case did not work for the entirety of the bonus period and therefore failed to meet the requirements for a bonus payment. *Id.* at *5-7. Here, it is not disputed that Dr. Lanasa met all conditions necessary to receive a bonus for 2021 except for the unlawful Continued Service Requirement.

Finally, Defendant relies upon *Sorensen v. Westec InterActive Sec., Inc.*, No. 07-2841, 2008 WL 11367535 (D. Md. Sept. 2, 2008). There, as AstraZeneca readily concedes, the defendant retained "complete discretion" as to whether to award a bonus and "did not include language tying it to Plaintiff's performance or tenure at the company." *Id.*; Motion at 7. Here, to the contrary, Plaintiff's bonus was tied to his and AstraZeneca's performance. As Section V of the AZIP states,

7

"the amount of each Participant's Award shall be determined by their manager, *in accordance with the guidelines appropriate for their individual performance rating*, bonus target and company performance factor." (emphasis added).[3]

### 3. Even if the Continued Service Requirement was not Void for Public Policy, Defendant Never Notified Plaintiff of this Requirement

Assuming, *arguendo*, that the Continued Service Requirement is *not* void for public policy in Maryland (of course, given the considerable weight of authority set forth above, it is), Defendant never advised Plaintiff of any change in the AZIP. The MWPCL requires employers to notify employees "at least 1 pay period in advance . . . of any change in . . . wage." Md. Code Ann., Lab. & Empl. § 3-504(a)(3). Although AstraZeneca retained *some* discretion over the amount of Dr. Lanasa's bonus award, such discretion cannot be exercised in an unlawful manner. *Shaffer v. ACS Gov't Servs.*, 454 F. Supp. 2d 330, 336 (D. Md. 2006) (acknowledging that employers retain discretion to terminate the employment of at-will employees for any *legal* reason); *Hemphill v. ARAMARK Corp.*, 2014 U.S. Dist. LEXIS 39809, at *66 fn. 18 (D. Md. 2014) ("[A]t-will employment cannot be terminated for illegal reasons."). *See also, Freeman v. N. State Bank*, 282 Fed. Appx. 211, 217 (4th Cir. 2008) (stating that "an employer is free to develop its own criteria for employment decisions, so long as those criteria are not race-based.").

Here, Dr. Lanasa was not advised of any change to the AZIP. Specifically, AstraZeneca did not notify Dr. Lanasa of the (unlawful) Continued Service Requirement until after he had already tendered his resignation and committed himself to starting employment with his new employer prior to the March payout date. Compl. ¶ 12.

---

[3] Company performance was not in issue. In 2021, as alleged in the Complaint and not disputed in the Motion, AstraZeneca had revenues in excess of Thirty-Seven Billion Dollars ($37,000,000,000.00), an increase of 41% from the prior year. Complaint at ¶ 2.

8

Accordingly, the Court should deny Defendant's Motion to Dismiss with respect to Count I of Plaintiff's Complaint.

## B. Plaintiff's Breach of Contract Claim Also Survives Defendant's Motion to Dismiss

### 1. Dr. Lanasa's Acceptance of Defendant's Employment Agreement Created an Implied Contract that Defendant Would Pay Him a Bonus if all Necessary Criteria Were Met

The December 2018 Employment Agreement set Plaintiff's target bonus at 45% of his annual salary and stated that the bonus "*will be payable* annually in March." Motion Ex. B. (emphasis added). Dr. Lanasa's acceptance of these terms and continued employment with AstraZeneca created an implied contract.

Where an employment agreement includes a bonus as "a significant component of the employment offer," acceptance of the agreement creates an implied contract between the employer and employee. *In re Nat'l Energy & Gas Transmission, Inc.*, *supra*, at 337. Where a bonus is labeled "discretionary," it does not mean that the employer can simply deny a bonus "for any reason whatsoever, no matter how arbitrary or unreasonable." *Id.* at 332-33. In *In re Nat'l Energy & Gas Transmission, Inc.*, the employment agreement, like the agreement between Dr. Lanasa and AstraZeneca, gave the employer discretion as to payment of the bonus award. The court observed, however, that although the employer's bonus plan stated that awards were discretionary, "it does not state that [the employer] could deny such bonuses for any reason under the sun." *Id.* at 335. The court further stated:

> Unless it was the intent of the parties to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties, there are at least certain purposes for which the expressly conferred power to exercise discretion cannot be employed due to restrictions imposed by the covenant of good faith and fair dealing.

*Id.* at 333 (quoting *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1153 (D.C. Cir. 1984) (internal quotation marks and brackets removed).

9

When the employer retains discretion over aspects of its employees' compensation, it "must exercise that discretion in good faith." *Univ. Of Baltimore v. Iz*, 716 A.2d 1107, 1127 (Md. Ct. Spec. App. 1998). An implied contract will exist regardless of whether a bonus award is labelled "discretionary," unless "the investiture of discretion is intended to be absolute." *In re Nat'l Energy & Gas Transmission, Inc.* at 334.

In the instant action, Defendant's discretion in determining whether to award or setting the amount of Dr. Lanasa's bonus was not absolute. Section V of the AZIP states that "the amount of each Participant's Award shall be determined by their manager, in accordance with the guidelines appropriate for their individual performance rating, bonus target and company performance factor." AZIP at 5. Section XII allows Defendant to reduce awards when an employee owes a debt to Defendant and provides for decreased bonuses by specific percentages when an employee has received written warnings. AZIP at 8. Similarly, Schedule A to the AZIP provides additional guidance regarding the calculation of wages, including use of the Global Performance Factor. AZIP at 11-13. Defendant has an "Administrative Committee," a "North American Governing Committee," and a "Remuneration Committee of the Board of AstraZeneca PLC" which are all tasked with administering the AZIP, providing guidance to managers, and establishing "Bonus Percentage Award ranges" each year. Moreover, Schedule A sets forth a specific formula for determining an award amount: "Award = Qualifying Earning x Bonus Percent Award." AZIP at 11.

Under these circumstances, AstraZeneca did *not* retain complete and unfettered discretion over Dr. Lanasa's bonus award. While AstraZeneca did retain discretion to adjust the amount of Dr. Lanasa's bonus award based on Dr. Lanasa's performance and the performance of the company at large, among other factors, it did not retain the discretion to deny Dr. Lanasa his bonus for "any

reason under the sun." *In re Nat'l Energy & Gas Transmission, Inc.*, *supra*, at 335. Moreover, like the bonus plan in *In re Nat'l Energy & Gas Transmission, Inc.*, Dr. Lanasa's bonus was an integral portion of his compensation. Indeed, a target bonus award of 45% of his annual salary amounts to nearly one third of his total compensation even before any Global Performance Factor is applied.[4] AstraZeneca cannot be permitted to lure employees by promising substantial bonuses and then refuse to pay such bonuses, without legal justification, after the employee has completed all conditions necessary for an award.

### 2. It is Immaterial that Plaintiff Was Not Employed by Defendant on the Bonus Payment Date

Defendant's argument that it had no contractual obligation to pay Dr. Lanasa's bonus because he was not employed on the bonus payment date, as allegedly required by the AZIP, must fail. *See* Motion at 8-9. Under Maryland Law, "[a]n agreement to work for less than the wage required under [the MWPCL] is void." Md. Code Ann., Lab. & Empl. § 3-502(f). Likewise, the MWPCL requires employers to pay departing employees "***all wages due for work that the employee performed before the termination of employment***, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a) (emphasis added). "Restated simply, where an employee earns wages under the Act, the employer must pay them, regardless of the ensuing termination of the employee." *Medex*, 811 A.2d at 304. This conclusion was reaffirmed in *Whiting-Turner Contractor Co. v. Fitzpatrick*, 783 A.2d 667 (Md. 2001). There, the Maryland Court of Appeals concluded that, "what is due an employee who terminates employment with an employer are wages

---

[4] On information and belief, the bonus for 2021 included a "multiplier" of 1.64, reflecting the banner year enjoyed by Defendant, so that the amount of the 2021 bonus earned by Plaintiff per the terms of the December 2018 Employment Agreement was approximately $273,060.00 (45% x $370,000.00 = $166,500.00 x 1.64 = $273,060.00). Complaint at ¶ 13.

11

for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration, other than salary, that is promised in exchange for the employee's work." *Id.* at 671.

Here, Defendant cannot rely upon its Continued Service Requirement because Maryland law makes clear that where wages are earned for work performed prior to the termination, the employer must pay them. Here, Defendant owed Dr. Lanasa wages (a bonus) for work fully performed. Defendant's sole stated reason for denial of the bonus was Dr. Lanasa's separation from employment; however, Dr. Lanasa completed all conditions necessary to receive his bonus.

Accordingly, the Court should deny Defendant's Motion to Dismiss with respect to Count II of Plaintiff's Complaint.

## C. Plaintiff's Unjust Enrichment/Quantum Meruit Claim Survives Defendant's Motion to Dismiss

### 1. Plaintiff's Unjust Enrichment Claim is Adequately Pled

"Unjust enrichment is the unjust retention of a benefit to the loss of another or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Owens v. Sheffel*, 2021 Md. App. LEXIS 38, at *8 (Ct. Spec. App. Jan. 22, 2021). Unjust enrichment is a "quasi-contract" claim, which is a "legal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Rests.*, 219 A.3d 99, 104 (Md. Ct. Spec. App. 2019).

To state a claim for unjust enrichment, Plaintiff must allege (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew or appreciated the benefit; and (3) the defendant

12

accepted or retained the benefit under circumstances that make it inequitable for the defendant to retain the benefit without the payment of its value. *Owens*, 2021 Md. App. LEXIS 38, at *9.

Here, the first two elements of unjust enrichment are met because Plaintiff conferred a benefit on AstraZeneca through his work for the company throughout the entire bonus period and Defendant knew of or appreciated the benefit. Defendant argues, instead, that the third element was not me because Plaintiff has not pled facts "showing the defendant was enriched as a result of circumstances, such as fraud or misrepresentation, that might make it inequitable for the company to retain the value of appellant's services without paying for them." Motion at 9. Defendant is incorrect. There are ample facts in the Complaint to demonstrate that AstraZeneca benefitted from Dr. Lanasa's work in a manner that would be inequitable if he were not fairly compensated for that work.

While "fraud or misrepresentation" are *not* elements of unjust enrichment, and Plaintiff is not required to so demonstrate, the Complaint nevertheless contains details of Defendant's misrepresentations. Indeed, Defendant represented to Plaintiff that he would receive a bonus based on his performance and the performance of the company if he fulfilled the conditions necessary to receive such bonus, namely, satisfactory performance and working through the entire bonus period. Plaintiff fulfilled those conditions (which were set forth in a document Defendants claim was *not* a contract) but was denied the bonus anyway. Given that Plaintiff's target bonus was nearly one-third of his total expected compensation,[5] it would be inequitable for AstraZeneca to accept Plaintiff's work for the entire bonus period and nevertheless deny him the bonus for the arbitrary reason that he was not employed on the bonus payment date.

---

[5] Actually, the bonus payment was considerably more than one-third when the bonus multiplier of 1.64 is considered.

Defendant relies on *Blanch v. Chubb & Son, Inc.*, 2012 U.S. Dist. LEXIS 160363 (D. Md. Nov. 8, 2012) in support of its argument that Plaintiff's unjust enrichment claim should be dismissed. Such reliance is misplaced. In *Blanch*, the plaintiff's unjust enrichment claim was dismissed because plaintiff did not plead any facts in support of his claim and instead "merely recite[d] the elements of the claim and conclusions of law." *Id.* at *15. Here, unlike in *Blanch*, Dr. Lanasa has alleged ample facts to support his unjust enrichment claim, as set forth in the Complaint and discussed above.

To the extent this Court should find Plaintiff's allegations insufficient to allege a cause of action for unjust enrichment, any such deficiencies can be readily cured through amendment.

2. Plaintiff is Permitted to Plead Alternative Causes of Action

Defendant argues that Plaintiff's claim for Unjust Enrichment/Quantum Meruit should be dismissed because the Complaint alleges that a contract exists. Motion at 10 ("Because [Plaintiff] purports to base his claim on an express contract, his unjust enrichment claim fails as a matter of law."). While it is true that Plaintiff cannot simultaneously prevail on both his breach of contract claim and his unjust enrichment/quantum meruit claim, it is axiomatic that Plaintiff may plead alternative and even inconsistent causes of action. *Swedish Civ. Aviation Auth. v. Project Mgmt. Enters.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) ("[A]lthough [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute."). AstraZeneca cannot argue on the one hand that no contract existed between the parties and simultaneously argue on the other hand that Plaintiff's quasi-contract cause of action must be dismissed merely because he has *alleged* the existence of a contract (which is disputed by Defendant).

14

In support of this argument, Defendant relies on *Severn Mktg. Assocs., Inc. v. Doolin*, 2010 U.S. Dist. LEXIS 102992 (D. Md. 2010). In *Severn*, unlike in the instant case, there was no dispute that a valid contract existed. *Id.* at 30. Likewise, Defendant's reliance on *Allegis Grp., Inc. v. Jordan*, 2013 U.S. Dist. LEXIS 54844 (D. Md. Apr. 17, 2013), is misplaced. There, like in *Severn*, the existence and legality of an express contract between the parties was not questioned. AstraZeneca, by contrast, contends there is no contract between the parties related to Dr. Lanasa's bonus: "Here, neither the December 2018 Offer Letter nor the Astra Zeneca Incentive Plan contains any language sufficient to establish a definite promise to pay any incentive award under Maryland Law." Motion at 8.

Defendant further argues that breach of contract and unjust enrichment claims can only be brought together when one single exception applies, *viz.*, "where the plaintiff also pleads allegations of bad faith or fraud." Motion at 10. Other exceptions exist under Maryland Law, however, including for situations in which an express contract between the parties "does not fully address a subject matter." *AAC HP Realty, LLC*, 219 A.3d at 105. This is exactly what Defendant argues in its Motion – that the December 2018 Employment Agreement does not create a contract for the payment of a bonus to Dr. Lanasa.

Defendant cannot have it both ways, simultaneously denying the existence of a contract yet claiming that Plaintiff's Unjust Enrichment/Quantum Meruit claim is legally insufficient. Accordingly, the Court should deny Defendant's Motion to Dismiss with respect to Count III of Plaintiff's Complaint.

### D. Defendant's Motion to Dismiss Includes Documents that Convert it into a Motion for Summary Judgment

Defendant attached several exhibits to its Motion to Dismiss that convert the Motion into one for summary judgment. To properly respond to these arguments, Plaintiff requires discovery.

Most concerning is Defendant's attachment of the AZIP as Exhibit C to the Motion, which is not mentioned in or relied upon by Plaintiff in his Complaint. Indeed, Plaintiff did not become aware of the existence of this document until after he complained about Defendant's unlawful withholding of his bonus.

Moreover, Defendant inserts several facts into its Motion that are not included within the Complaint. For example, Defendant claims that under the AZIP, a bonus is not "earned until the Participant's manager has determined that an Award is due and payable and all the conditions of the Plan have been met." Motion at 3. Plaintiff cannot possibly respond to this claim without adequate discovery on these issues. First, Plaintiff should be permitted discovery to determine, *inter alia*, whether Plaintiff's manager actually ***did*** determine that an award should be given to Plaintiff, the amount of such an award, the factors and guidelines that were considered in making such an award, and the awards given to other employees.

Similarly, while Defendant claims that the Continued Service Requirement bars Plaintiff from an award, it is undisputed that Plaintiff was not notified of this revision to the AZIP until after he was denied his bonus. Discovery is necessary here, too, to determine when and how employees, including Dr. Lanasa, were notified of this change to determine whether the procedures met the requirements of Maryland Law.

Accordingly, Plaintiff requests that Defendant's Motion to Dismiss be denied as a premature Motion for Summary Judgment so that Plaintiff may have an opportunity to uncover facts related to Defendant's defenses raised in the Motion.[6]

---

[6] Given that Defendant styled its Motion as a motion to dismiss and not one for the alternative remedy of summary judgment, Plaintiff does not believe a formal Rule 56(f) affidavit from counsel is necessary at this time. Of course, if the Court believes such an affidavit is required, undersigned counsel will provide one.

16

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety. In the event that any portion of Defendant's Motion if granted, Plaintiff respectfully requests an opportunity to amend.

Respectfully submitted,

/s/
Philip B. Zipin, Esq.
Anthony G. Bizien, Esq.
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave., Suite 400
Silver Spring, MD 20910
(301) 587-9373 (ph)
pzipin@zagfirm.com
abizien@zagfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 19th day of July 2022, a true and correct copy of this Opposition to Defendant's Motion to Dismiss was served on all counsel of record via this Court's ECF system.

/s/
Philip B. Zipin, Esq.
