IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARK LANASA, M.D., Ph.D,** | * |
| Plaintiff | * |
| | Civ. No. DLB-22-1399 |
| v. | * |
| **ASTRAZENECA PHARMACEUTICALS LP,** | * |
| | * |
| Defendant. | |
| | * |

**MEMORANDUM OPINION**

Mark Lanasa claims his former employer, AstraZeneca Pharmaceuticals LP ("AstraZeneca"), breached an agreement to give him a bonus under the company's incentive plan. ECF 4. He asserts a violation of the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL"), breach of contract, and quantum meruit/unjust enrichment. AstraZeneca has moved to dismiss the complaint for failure to state a claim. ECF 8. Lanasa has filed an opposition, and AstraZeneca replied. ECF 16, 17. A hearing is not necessary. Loc. R. 105.6. For the following reasons, the motion to dismiss is granted.

**I.   Background**

   **A.  Lanasa's allegations**

In deciding the motion to dismiss, the Court accepts the following well-pleaded allegations as true. Mark Lanasa, M.D., Ph.D., was hired by AstraZeneca in 2017 as Senior Director, Study Division. ECF 4, ¶ 4. His offer letter, dated May 11, 2017, set out the terms of his employment. *Id.* He was offered an initial salary of $300,000 per year. *Id.* The letter stated that he

> will be eligible to participate in the AstraZeneca Incentive Plan (AZIP). Under this plan, your annual incentive target will be 40% of your actual base earnings for the

> bonus plan year payable annual in March . . . . Your actual incentive award will be based on your individual performance and the overall performance of AstraZeneca.

*Id.* The letter further stated that he was eligible to receive a sign-on bonus in three installments, the second and third of which were "[c]ontingent upon continued employment with AstraZeneca." *Id.* ¶ 6.

During 2017 and 2018, Lanasa performed his job well. *Id.* ¶ 5. AstraZeneca was profitable. *Id.* He received bonuses for both 2017 and 2018 that reflected the full target amount of incentive compensation available to him. *Id.* These bonuses were paid in March 2018 and March 2019, respectively. *Id.*

AstraZeneca promoted Lanasa to Vice President, Global Development Lead, Immuno-Oncology in December 2018. *Id.* ¶ 8. He and AstraZeneca executed a new employment agreement on December 21, 2018. *Id.* AstraZeneca increased his annual salary to $343,200. *Id.* The letter agreement stated that he

> will be eligible to participate in the relevant company short-term incentive plan at a target rate of 45% of your actual base earnings for this bonus year. Your actual incentive award will be payable annually in March beginning in March 2020 in accordance with the terms and conditions of the Plan.

*Id.* He continued to perform well, receiving bonuses for 2019 and 2020 that reflected the full target amount of incentive pay available to him. *Id.* ¶ 10. These bonuses were paid in March 2020 and March 2021, respectively. *Id.*

Throughout 2021, Lanasa continued to perform his job well and in accordance with AstraZeneca's expectations. *Id.* ¶ 11. His salary for that year was $370,000. *Id.* ¶ 13. AstraZeneca earned over $3.7 billion in annual revenues for 2021, an increase of 41% over the prior year. *Id.* ¶ 2. When calculating 2021 bonuses, AstraZeneca utilized a "multiplier" of 1.64 that reflected its success that year. ECF 4, ¶ 13. The full amount of the 2021 bonus that Lanasa could have been

eligible for, per the terms of the December 2018 letter, was $273,060 (45% x $370,000 = $166,500; $166,500 x 1.64 = $273,060). *Id.*

On January 21, 2022, Lanasa accepted a position at another company and announced his resignation, effective February 4. *Id.* ¶ 12. Consistent with timing in prior years, AstraZeneca issued 2021 bonuses on March 15, 2022, but it refused to pay Lanasa a bonus for that year. *Id.* When Lanasa protested, AstraZeneca explained that it did not pay him because he was not employed as of the bonus payment date. *Id.* It stated that the company's short-term incentive plan had been changed to exclude from coverage employees who were no longer employed as of the bonus payment date. *Id.* Lanasa had never been infor2med of this change. *Id.*

### B. The AstraZeneca Incentive Plan

Lanasa did not attach to his complaint the AstraZeneca Incentive Plan ("AZIP"), but AstraZeneca attached it to its motion.[1] *See* ECF 8 & 9. Although the Court's review of a Rule 12(b)(6) motion to dismiss typically is limited to the pleadings and documents attached to the complaint, *see* Fed. R. Civ. P. 12(b)(6), 12(d), the Court may consider documents integral to and

---

[1] AstraZeneca moved to seal the AZIP because it contains sensitive business information about its compensation policies. ECF 7. Lanasa does not oppose the motion. The common law presumes that the public has a right to inspect judicial records and documents. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). This presumption of access, however, may be overcome if competing interests outweigh the interest in access. *Id.* A corporation "may possess a strong interest in preserving the confidentiality of its proprietary and trade secret information, which in turn may justify partial sealing of court records." *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). Before sealing, the Court must consider less drastic alternatives. *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 316 (D. Md. 2014). AstraZeneca has a strong interest in keeping its compensation plan confidential: the public has little use for it, and competitors could use it to AstraZeneca's disadvantage. *See Moon v. Veritas Techs., LLC*, No. GJH-21-2750, 2022 WL 3348103, at *3–4 (D. Md. Aug. 12, 2022) (sealing incentive compensation plans that contain information on a company's commission structure). Since the vast majority of the AZIP contains confidential information, redaction is not a viable option. The motion to seal is granted. However, the AZIP provisions relevant to this motion were cited by the parties in their unsealed briefs, and the Court cites those non-confidential provisions in this opinion.

explicitly relied on in the complaint, so long as the plaintiff does not challenge their authenticity. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Lanasa does not question the AZIP's authenticity. And the AZIP is integral to and relied on in his complaint. He alleges that in his 2017 and 2018 employment agreements, AstraZeneca told him he was eligible to participate in the AZIP and that the agreements and his compliance with the AZIP's terms entitled him to a bonus. *See* ECF 4, ¶ 4 (alleging as part of his 2017 employment agreement, he was eligible to participate in the "AstraZeneca Incentive Plan (AZIP)" and referring to terms of the plan); *id.* ¶ 8 (alleging as part of his 2018 employment agreement, he was "eligible to participate in the relevant company short-term incentive plan"). And when he confronted AstraZeneca after it refused to pay him his 2021 bonus "without legal excuse or justification," the company took the position that its "short-term incentive plan had been changed in February 2021 to exclude from coverage employees who were not employed as of the payment date." *Id.* ¶ 12. This denial of a bonus under the revised AZIP forms the basis for every claim Lanasa asserts. *Id.* ¶ 20 (alleging in MWPCL count that "Defendant failed to pay Plaintiff his annual bonus earned in 2021"), *id.* ¶ 25 (alleging in breach of contract count that "Defendant's failure and refusal to pay Plaintiff the bonus he had earned for 2021 was a breach of the December 2018 Employment Agreement"), *id.* ¶ 29 (alleging in quantum meruit/unjust enrichment count that "Defendant . . . has failed and refused to pay Plaintiff the value of his 2021 bonus . . . .").

Lanasa argues that the Court should not consider the AZIP on the motion to dismiss because he did not know it had been revised and he did not review it until after he was denied his bonus and complained to AstraZeneca. ECF 16, at 16. He claims that he needs discovery to determine whether employees were properly notified of the revisions and whether its new terms were followed. But such arguments go to whether the terms of the revised AZIP govern, and if

so, whether they were breached—not to whether the document is authentic or integral to his complaint. Lanasa may not have known about revisions to AZIP terms or seen the updated document until after he was denied a bonus, but he relied on the existence of the document as the basis for his claims. Thus, the AZIP—the authenticity of which is not challenged—is integral to his claims, and the Court will consider it on the motion to dismiss without converting the motion into one for summary judgment.[2] *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (describing an integral document as "a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted'" (citation omitted)); *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. Jul. 8, 2010) (listing a document that "constitute[s] the core of the parties' contractual relationship" in a breach of contract dispute as an example of a document integral to a complaint (citation omitted)).

The AZIP states that it is "Amended and Restated Effective January 1, 2021." ECF 9, at 2.[3] It describes the incentive plan's purpose, administration, and eligibility criteria, and how awards are earned, determined, and paid. Regarding the determination of awards, the AZIP states:

> The Award is a strictly discretionary and conditional payout [. . . .] A Participant shall have no contractual right to an Award. The Participant's manager shall have complete discretion to determine whether a Participant will receive an Award and the amount of any such Award. An Award shall not be earned until the Participant's manager has determined that an Award is due and payable and all the conditions of the Plan have been met.

---

[2] AstraZeneca also attached to its motion a May 2017 letter to Lanasa offering him employment and a December 2018 letter to Lanasa offering him a promotion. Lanasa does not object to the Court's consideration of these letters, both of which he quotes in his complaint. ECF 4, ¶¶ 4, 8.
[3] Elsewhere in the AZIP, it states that "[t]his amendment and restatement is effective January 1, 2019." ECF 9, at 4.

5

*Id.* at 8.  Schedule A to the AZIP sets out the specific process and formula by which awards for U.S.-based employees are calculated, including use of a multiplier.  *Id.* at 14.  A range for bonus percent awards is established by the "NAM Governance Committee," which provides guidance to managers.  *Id.*

The revised AZIP also includes a "Service Requirement" that states that "[a]n Employee must be actively employed by the Company . . . through the last day of the Plan Year and must meet the Active Service Requirement in order to be eligible to receive an Award for such Plan Year."  *Id.* at 8.  The definition of "Active Service Requirement" requires that an employee "be actively employed at the time the bonus is paid in order to be eligible to receive their bonus award."  *Id.* at 4.

## II.     Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

### III.   Discussion

#### A.   Maryland Wage Payment and Collection Law claim

The MWPCL requires that an employer pay an employee "all wages due for the work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a). In applying Section 3-505, courts consider (1) whether the disputed amount constitutes a wage, and (2) if so, whether it is owed to the employee as "wages due." *Medex v. McCabe*, 811 A.2d 297, 303 (Md. 2002).[4] Section 3-501 of the MWPCL defines "wage" as "all compensation that is due to an employee for employment," including "(i) a bonus;

---

[4] For cases decided when the Supreme Court of Maryland and the Appellate Court of Maryland had different names, the Court will utilize the earlier citation format.

(ii) a commission; (iii) a fringe benefit; (iv) overtime wages; or (v) any other remuneration promised for service." Md. Code Ann., Lab. & Empl. § 3-501(c)(2).

Even though the MWPCL definition of wage includes bonuses, not every bonus is considered a wage. *Medex*, 811 A.2d at 302. Instead, "a bonus constitutes a wage only if given in exchange for an employee's work." *Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 425 (D. Md. 2005) (citing *Medex*, 811 A.2d at 302); *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 418 (4th Cir. 2005) (recognizing that to count as a "wage," the employee "must have been *promised* the particular form of compensation as remuneration for his labor" (emphasis in original)); *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672 (Md. 2001) (noting that "to be wages, to be included within the statute, the payment must have been promised to the employee as compensation for work performed") (internal quotation omitted). If the payment is "dependent on conditions other than the employee's efforts, they lie outside the definition" of a wage. *Medex*, 811 A.2d at 302. Relevant here, if a bonus is discretionary—with respect to whether it will be granted or in what amount—it is not considered a wage. *See Varghese*, 424 F.3d at 420 (reasoning that because employer "always retained the discretion" not to grant certain stock options, those stock options did not constitute wages); *Martignetti v. Int'l Bus. Mach. Corp.*, 855 Fed. App'x 857, 861 (4th Cir. 2021) (finding that commission did not constitute wage where the company "repeatedly and unreservedly stated that [it] could adjust the amount of any commission at its sole discretion," and thus never promised plaintiff that he would be paid a particular rate); *Kramer v. Wabtec Corp.*, No. AW-07-2452, 2008 WL 11509712, at *5 (D. Md. Aug. 27, 2008) (stating "[t]he Fourth Circuit and the Maryland courts have interpreted 'wages' as being limited to promised consideration for services that is not discretionary"); *In re Nat'l Energy & Gas Transmission, Inc.*, 351 B.R. 323, 333 (D. Md. 2006) (acknowledging that "awards based solely on an employer's

absolute discretion do not qualify (in the language of § 3-501) as 'compensation . . . promised in exchange for the employee's work'").

In *Martignetti*, the Fourth Circuit, in an unpublished opinion, held that a discretionary bonus is not considered a wage. 855 Fed. App'x at 861. There, IBM expressly reserved the right to adjust the terms of its incentive plan and to modify or cancel the plan. *Id.* at 859. When IBM unilaterally and retroactively capped Martignetti's commissions, allegedly denying him $526,000, he filed suit. The Fourth Circuit affirmed dismissal of his MWPCL claim, reasoning that the "plain language [of the plan] . . . precludes counting the specific commission amounts he seeks as 'wages' under the MWPCL. Put simply, IBM did not make a binding promise to pay Martignetti a particular rate of commission in exchange for his work." *Id.* at 861. Instead, the plan "repeatedly and unreservedly" stated that IBM could adjust the amount of any commission at its "sole" and "unfettered discretion." *Id.* In light of this discretion, the Fourth Circuit rejected Martignetti's argument that IBM was not allowed to reduce commissions after he had earned them. *Id.*

Here, too, AstraZeneca has reserved sole and unfettered discretion to determine whether and how much to award an employee under its incentive plan. Lanasa's December 2018 employment agreement states that his "actual incentive award will be payable annually in March . . . *in accordance with the terms and conditions of the Plan*." ECF 8-3, at 1 (emphasis added). The AZIP, in turn, states that an award is "a strictly discretionary and conditional payout." ECF 9, at 8. An employee's manager has "complete discretion" to determine whether the employee receives an award and, if so, how much. *Id.* An employee "shall not" earn an award until the manager determines the employee should receive an award and all incentive plan conditions have been met. *Id.* The AZIP also states that "[a] Participant shall have no contractual right to an

9

Award." *Id*. The discretionary nature of an award under the AZIP could not be clearer. Lanasa was not promised a bonus in exchange for his work.

Lanasa relies on *In re National Energy* for the proposition that his bonus, despite being labeled "discretionary," is a wage. This reliance is misplaced. In *In re National Energy*, the bankruptcy court allowed the MWPCL claim to proceed even though the company had labeled its distribution of awards as "discretionary." 351 B.R. at 332–35. But the award program at issue was not part of a written contract; if it were, the court stated it would have first looked to the contractual language. *Id.* at 334. Instead, the court observed that the employer had labeled the award program "discretionary" in various exhibits, but it was "unclear what kind of discretion [the company] held" and whether such discretion was absolute. *Id.* Without this clarity, the mere labeling of the plan as "discretionary" was "not necessarily the equivalent of 'for any reason whatsoever, no matter how arbitrary or unreasonable.'" *Id.* at 332–33 (citation omitted).

By contrast, the terms of the AZIP are written and unequivocal. In plain language, they state that the employee's manager has "complete discretion" to determine whether to give an award and that the employee has "no contractual right to an award." ECF 9, at 8. Lanasa argues the AZIP's instructions on how managers should calculate the award amount undermine the "discretionary" labeling. But these instructions do not negate the fact that AstraZeneca reserved the absolute discretion to grant or deny an award in the first instance. *See Martignetti*, 855 Fed. App'x at 861 (reasoning that various benchmarks for earning incentive payments "in no way purport[] to take priority over the disclaimer language—that is, that the Plan is not a promise to pay in the first instance and that IBM reserves sole discretion as to what amounts are distributed

to employees as earned commissions"). The bonus Lanasa seeks does not constitute a wage under the MWPCL.[5]

AstraZeneca's motion to dismiss the MWPCL claim is granted.

### B. Breach of Contract claim

Lanasa alleges AstraZeneca breached the December 2018 employment agreement by refusing to pay him the bonus he earned in 2021. ECF 4, ¶¶ 23–25. To establish a breach of contract under Maryland law, plaintiff must prove "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011), *aff'd*, 43 A.3d 1029 (Md. 2012)). Formation of a valid contractual obligation requires mutual assent (an offer and acceptance), an agreement definite in its terms, and sufficient consideration. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013). For sufficient consideration, there must be a "benefit to the promisor or a detriment to the promisee." *Mould v. NJG Food Serv. Inc.*, 986 F. Supp. 2d 675, 678 (D. Md. 2013) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003)).

To count as consideration, a promise must "constitute a binding obligation. Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement." *Cheek*, 835 A.2d at 661. An illusory promise is not a binding obligation and thus cannot constitute sufficient consideration. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek*, 835 A.2d at 661). When an employer retains "unlimited discretion . . . to reduce, modify, recover or withhold incentive pay . . . in [its] sole discretion," that complete discretion renders a promise illusory. *Moon v. Veritas Techs., LLC*, No. GJH-21-2750, 2022 WL

---

[5] Because the bonus is not a wage under the MWPCL, the Court need not address Lanasa's argument that the plan's continuity of service requirement violates public policy or whether AstraZeneca advised him of the requirement.

3348103, at *7 (D. Md. Aug. 12, 2022) (quoting *Windesheim v. Verizon Network Integration Corp.*, 212 F. Supp. 2d 456, 462 (D. Md. 2002)). Such discretionary language makes a promise illusory because it "creates no real promise" in the first place. *Cheek*, 835 A.2d at 662.

The December 2018 employment agreement stated that Lanasa's incentive award "will be payable annually in March beginning in March 2020 *in accordance with the terms and conditions of the Plan*." ECF 8-3, at 2 (emphasis added). The incentive plan thus was incorporated by clear reference into the agreement. *Wells v. Chevy Chase Bank, F.S.B.*, 832 A.2d 812, 831 (Md. 2003) ("Maryland law recognizes that parties may agree to define their rights and obligations by reference to documents external to the contract."). The incentive plan, in turn, stated that the Award was a "strictly discretionary and conditional payout," that the employee's manager has "complete discretion to determine whether a Participant will receive an Award and the amount of any such Award," and that an employee "shall have no contractual right to an Award." ECF 9, at 8. Even though the employment agreement said the award "will be payable annually," that language must be read "in accordance with" the plan's terms and conditions, under which AstraZeneca made "no real promise" to pay the bonus because it retained discretion to refuse to award a bonus for any reason. *See Cheek*, 835 A.2d at 662. Without a promise that could form a binding obligation, there was no consideration, and AstraZeneca was not obligated to award a bonus.

There was no consideration for another reason. When incentive pay is offered to an employee for performing work that they were already obligated to perform, there is no consideration, and no legal obligation to pay a bonus. *Windesheim v. Verizon Network Integration Corp.*, 212 F. Supp. 2d 456, 462 (D. Md. 2002) ("Longstanding Maryland legal principles recognize that no enforceable contractual obligation is created when an employer offers employees

a bonus for doing that which an employee is already required to do pursuant to the terms of the engagement of employment" (citing *Johnson v. Schenley Distillers Corp.*, 28 A.2d 606 (Md. 1942) (collecting cases))).  Lanasa has not alleged that he was promised a bonus for anything beyond "excellent services rendered"—that is, beyond simply performing his job well.  ECF 4, ¶ 31.

Lanasa offers several arguments in reply.  First, he contends that AstraZeneca's discretion to deny an incentive award was not absolute because the plan included provisions that offer guidance on how to calculate and adjust awards.  *See* ECF 16, at 10.  This limited discretion, Lanasa argues, must be exercised in good faith under the implied covenant of good faith and fair dealing.  Second, he claims that, as in *In re National Energy*, there was an implied contract under which he is owed the bonus.  And finally, again relying on *In re National Energy*, he contends that the bonus was an integral component of his compensation because it amounted to nearly one-third of his total expected compensation, even before considering the multiplier.  ECF 16, at 13.

Lanasa's arguments are unavailing.  The provisions in the AZIP he cites as evidence of AstraZeneca's "limited" discretion concern how managers calculate award amounts *if* the manager decides to issue an award in the first instance.  They do not limit the absolute discretion granted to the manager to decide "whether a Participant will receive an Award" at all.  ECF 9, at 8; *see Walker v. Dep't of Hum. Res.*, 842 A.2d 53, 61 (Md. 2004) (internal citations omitted) (requiring courts to construe contracts "as a whole, interpret[ing] their separate provisions harmoniously, so that, if possible, all of them may be given effect"); *Korba v. Stanley Black & Decker, Inc.*, No. 12-cv-1989-DKC, 2012 WL 6019570, at *6 (D. Md. Nov. 20, 2012) (reasoning that "[s]tatements regarding an employee bonus plan cannot, however, form the basis of an enforceable contract where its terms give the employer discretion as to whether to award a bonus at all").

Lanasa's reliance on *In re National Energy* for his implied contractual theory of liability is misplaced because the case is not on point. In that case, there was no written contract. The court, therefore, looked to the parties' conduct to determine whether the parties intended for the employer to have absolute discretion in awarding a bonus. There was "some support in the record for inferring limitations in the exercise of [the employer's] discretion," and thus the employer was obligated to exercise that limited discretion in good faith. 351 B.R. at 335. But the covenant of good faith and fair dealing did not apply if, as here, "it was the intent of the parties to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties." *Id.* at 333 (internal quotation omitted). This distinction is also fatal to Lanasa's argument that the bonus was integral to his compensation. In *In re National Energy*, the court held that a base bonus award—which was referenced in the employer's offer letters, not based on any discretionary criteria, and undisputed by the employer—was integral to employee compensation. But the court did not hold that the additional, special bonus at issue was integral to compensation. It held that because there was some evidence that the discretion to award this additional bonus was limited, the employees could pursue their argument that denying it breached the implied obligation of good faith. The allegations in this case are fundamentally different than those in *In re National Energy*.

Finding no contractual obligation to pay the bonus, the Court grants AstraZeneca's motion to dismiss the breach of contract claim.

### C.  Quantum meruit claim

Two different forms of quantum meruit claims are recognized under Maryland law: one based on an implied-in-fact contract and one based on a quasi-contractual theory. *Mohiuddin v. Doctors Billing & Mgmt. Solutions, Inc.*, 9 A.3d 859, 864 (Md. Ct. Spec. App. 2010). Lanasa alleges the latter.

To recover under a quasi-contractual quantum meruit theory, which is identical to unjust enrichment, a plaintiff must allege:

> (1) A benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC,* 936 A.2d 343, 351 (Md. 2007); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002). Because this claim is quasi-contractual, it generally cannot arise when a valid contract exists between the parties concerning the same subject matter. *County Com'rs*, 747 A.2d at 610 (explaining that "[t]his rule holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations" (citation omitted)). But unjust enrichment may be pled in the alternative to breach of contract. *See Moon*, 2022 WL 3384103, at *9.

Lanasa contends that he conferred a benefit on AstraZeneca by performing excellently throughout 2021 (as he had done in 2019 and 2020), which in turn "contributed to the banner [2021] year that Defendant enjoyed as a company." ECF 4, ¶¶ 28–29. He implies, too, that AstraZeneca benefitted by his choosing to remain there throughout the year, as "the prospect of a generous bonus played a significant role in . . . incentivizing him to remain in Defendant's employ." *Id.* ¶ 9. He alleges AstraZeneca received, and knew it was receiving, "considerable benefits" from his performance beyond the amount it paid to him, but it nonetheless refused to pay him his 2021 bonus, despite having done so in prior years. *Id.* ¶¶ 29–31. Lanasa alleges that it is "inequitable and unjust" for AstraZeneca to "retain these benefits without payment of their value." *Id.* ¶ 32.

AstraZeneca argues that Lanasa cannot state a quantum meruit claim because he received a salary in exchange for his work and he did not confer any benefit on AstraZeneca beyond what

15

he contracted to provide.  The Court agrees.  This case is unlike *Moon*, in which the benefit conferred on the defendant was a lucrative deal that "put [defendant] over its target for the quarter" as a direct result of the plaintiff's services.  2022 WL 3348103, at *9.  It is also unlike *Makowski v. Bovis Lend Lease, Inc.*, in which the Court allowed an unjust enrichment claim to proceed because the plaintiff worked "hundreds of hours of overtime and weekend hours"—uncompensated by his biweekly salary—in expectation that he would receive a bonus.  2011 WL 1045635, at *10–11 (D. Md. Mar. 17, 2011).  Here, Lanasa alleges he performed his job very well, but he does not allege that he conferred a benefit on AstraZeneca above and beyond the work for which he was compensated.

AstraZeneca's motion to dismiss the quantum meruit claim is granted.

## IV. Conclusion

For the foregoing reasons, AstraZeneca's motion to dismiss the Maryland Wage Payment and Collection Law claim and the breach of contract claim is granted with prejudice.  AstraZeneca's motion to dismiss the quantum meruit claim is dismissed without prejudice.  A separate order follows.

3/15/2023
Date

Deborah L. Boardman
United States District Judge