IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARK LANASA, M.D., Ph.D., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 8:22-cv-01399-DLB |
| | * | |
| ASTRAZENECA PHARMACEUTICALS LP, | * | |
| | * | |
| Defendant. | * | **JURY TRIAL DEMANDED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AMENDED COMPLAINT

Plaintiff Mark Lanasa ("Plaintiff"), by and through his undersigned counsel and the law firm of Zipin, Amster & Greenberg, LLC, hereby files this Amended Complaint against Defendant AstraZeneca Pharmaceuticals, LP ("Defendant") for Quantum Meruit, Constructive Fraud, and Negligent Misrepresentation, as set forth below.

## PARTIES AND JURISDICTION

1. Plaintiff is over the age of twenty-one and a resident of the State of Maryland.

2. Defendant is a limited partnership formed under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware. Defendant provides products and services worldwide in the pharmaceutical industry. Defendant's annual revenues for 2021 were in excess of Thirty-Seven Billion Dollars ($37,000,000,000.00), an increase of 41% from the prior year.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to this action occurred in this District.

**FACTS**

5. Plaintiff began his employment with Defendant in about 2017, when he was hired as Senior Director, Study Division, pursuant to the terms of a written employment agreement, dated May 11, 2017 (the "May 2017 Employment Agreement"). His initial salary pursuant to the May 2017 Employment Agreement was $300,000.00 per year. In addition, Plaintiff was told that he would be "eligible to participate in the AstraZeneca Incentive Plan" ("AZIP").

6. The AZIP advised Plaintiff that "your annual incentive target will be 40% of your actual base earnings for the bonus plan year payable annually in March beginning in March 2018. Your actual incentive award will be based on your individual performance and the overall performance of AstraZeneca."

7. The AZIP did not make receipt of a bonus payment contingent upon continued employment with Defendant at the time the bonus was to be paid.

8. Plaintiff performed well and received excellent reviews. In 2017 and 2018, Plaintiff performed excellently, and Defendant was quite profitable in those years. Plaintiff received bonuses for both years, which were paid in March 2018 and March 2019, respectively. In each year, Plaintiff received the full amount of incentive compensation available to him.

9. The May 2017 Employment Agreement also provided that Plaintiff would be "eligible to receive a sign-on bonus in the amount of $200,000.00. The first lump-sum payment of $50,000.00 will be paid within 60 days of your joining us. *Contingent upon continued employment with AstraZeneca*, on or about June 30, 2018, you will receive another payment of $75,000.00. You will receive another payment of $75,000.00 at your two year anniversary." (emphasis supplied). Plaintiff received all three installments of the sign-on bonus.

10.     Though the May 2017 Employment Agreement made receipt of Plaintiff's sign-on bonus contingent upon continued employment, it did not require Plaintiff to remain employed with Defendant to receive annual bonus payments under the AZIP.

11.     In December 2018, Plaintiff was promoted to Vice President, Global Development Lead, Immuno-Oncology.  On about December 21, 2018, Plaintiff and Defendant executed a new employment agreement (the "December 2018 Employment Agreement").  Per the terms of the December 2018 Employment Agreement, Plaintiff's compensation package included an initial annual salary of $343,200.00.  The December 2018 Employment Agreement stated that Plaintiff would "be eligible to participate in the relevant company short-term incentive plan at a target rate of 45% of your actual base earnings for the bonus year. Your actual incentive award will be payable annually in March beginning in March 2020 in accordance with the terms and conditions of the Plan."

12.     The December 2018 Employment Agreement, like the May 2017 Employment Agreement, did not condition receipt of a bonus award on continued employment with Defendant at the time the bonus was to be paid.

13.     Bonus plan participation is a key part of compensation for any high-level employee in this field, and the prospect of a generous bonus played a significant role in attracting Plaintiff to AstraZeneca and incentivizing him to remain in Defendant's employ.

14.     Plaintiff, knowing superior performance would earn larger bonuses, went above and beyond in his employment with Defendant so he could receive his full target award.  Without the prospect of a bonus, Plaintiff would not have dedicated this level of commitment to Defendant.  Because of Plaintiff's prospective bonus, he performed duties that went beyond the requirements for his position.

15. For example, throughout 2021, Plaintiff regularly and customarily worked more than 50 hours per week including frequent nights and weekends. Plaintiff spent these long hours working for Defendant with the expectation that such efforts would be rewarded through a maximum bonus award. Plaintiff was also well aware that 2021 was going to be a banner year for AstraZeneca because of its critical positioning in the Covid-19 pandemic response, and that the considerable revenues anticipated by AstraZeneca in 2021 coupled with his own exceptional performance would enhance Plaintiff's opportunity for a substantial bonus under the AZIP.

16. Because of his outstanding contributions to Defendant, Plaintiff received full bonus payouts for calendar years 2019 and 2020.

17. Plaintiff continued to log long hours for Defendant in 2021, exceeding Defendant's expectations for his position. For 2021, Plaintiff's salary had increased to $370,000.00 per annum.

18. On January 21, 2022, after completing the 2021 work year and doing everything necessary to earn his annual bonus, Plaintiff accepted a position at another company and announced his resignation, effective February 4, 2022. At the time of his resignation, Plaintiff had no reason to believe that he would not be awarded his bonus for 2021 and had no inkling that he would be required to be employed as of the date the bonus checks were presented.

19. The payment for the 2021 bonus was made on March 15, 2022, consistent with the timing of past bonus payouts. However, Defendant failed and refused to pay Plaintiff his bonus for 2021, without legal excuse or justification other than that he was no longer employed by Defendant at the time of the payment. Defendant claimed that this had been a change to the AZIP which had been enacted in February 2021. Plaintiff was never informed of any such change to the AZIP nor had Defendant advised of any requirement that he remain employed on the pay-out date to remain eligible for the payment. Had Plaintiff been alerted to this change in plan requirements,

he would have adjusted his start date with his new employer to allow him to receive the 2021 bonus prior to departing.

20. Moreover, prior to 2021, at least two of Plaintiff's subordinate employees received full bonus payouts even though they voluntarily left Defendant's employ prior to the date on which bonuses were paid. Specifically, Naomi Liang left Defendant's employ in January 2019 and Matilde Saggese left Defendant's employ in January 2021. Both Ms. Liang and Ms. Saggese received their bonus awards for the year prior to their departures despite having left their employment months prior to the bonus payout date in March.

21. Plaintiff, as the direct supervisor of both Ms. Liang and Ms. Saggese, was well aware that each received her bonus. Indeed, Plaintiff was involved in the process of determining their bonus amounts. Additionally, both Ms. Liang and Ms. Saggese had specifically asked Plaintiff if they would receive their bonuses notwithstanding that they were resigning. Plaintiff, in both instances, contacted Defendant's Human Resources ("HR") department and was advised that both Ms. Liang and Ms. Saggese would receive their bonuses, and conveyed that to these former AstraZeneca employees.

22. Because Plaintiff knew that Ms. Liang and Ms. Saggese had received their bonuses despite resigning before the bonuses were paid, he had no reason to suspect that he would not receive his 2021 bonus payout, even though he would not be employed by AstraZeneca in March 2022. Plaintiff knew that this was Defendant's historical policy, and Plaintiff was never advised of any changes to this policy.

23. On about January 21, 2022, after announcing his resignation, Plaintiff sought confirmation from Dustin Simon, Defendant's HR Director for Oncology, that he would receive his 2021 bonus. Mr. Simon advised Plaintiff that, notwithstanding Defendant's historical record

of paying bonuses to departed employees under the AZIP, Plaintiff's bonus would not be paid. Mr. Simon further stated that the AZIP had been changed in 2021 – without any notice to Plaintiff – to require that employees be employed by Defendant as of the date of the bonus payment. Plaintiff protested that he had received no communication regarding this change and was completely unaware of it. Mr. Simon acknowledged that Defendant had not communicated to Plaintiff this key change to the AZIP.

24. Additionally, after announcing his resignation on about January 21, 2022, Plaintiff was immediately offboarded because of the competitive nature of his position. This offboarding included being cut off from the AstraZeneca network and computer system. Plaintiff had no further access to any internal AstraZeneca documents, including the AZIP. He was not advised of the change to the AZIP that required him to be employed on the bonus payout date until *after* he was told he would be offboarded. Had Defendant advised Plaintiff of this change prior to being offboarded, he would have extended his employment until after the March 15, 2022 payout date, to ensure receipt of his 2021 bonus.

25. Plaintiff was never advised by Defendant that he could remain employed until the bonus payout date and, because he was immediately offboarded, he was not given the option or opportunity to change his departure date even after being informed of the change to the AZIP.

26. Plaintiff reasonably relied on the AZIP provisions as he knew them and as he had witnessed them being applied in practice. Plaintiff had no reason to believe, prior to his resignation and immediate offboarding, that any changes had been made to the AZIP and Defendant did not communicate any changes to him.

27. On information and belief, the bonus under the AZIP for 2021 included a "multiplier" of 1.64, reflecting the banner year enjoyed by Defendant, so that the amount of the

2021 bonus earned by Plaintiff per the terms of the December 2018 Employment Agreement was $166,500.00 (45% of his annual salary of $370,000 = $166,500.00) x 1.64 = $273,060.00. The 2021 bonus amount represented approximately 44% of Plaintiff's anticipated total income for 2021.

28. Plaintiff has lost approximately $273,060.00 – the amount of his unpaid bonus for 2021.

## CAUSES OF ACTION

### COUNT I
### Quantum Meruit – Unjust Enrichment

29. Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each was set forth herein.

30. On about December 21, 2018, Plaintiff and Defendant executed the December 2018 Employment Agreement. Plaintiff believed that the December 2018 Employment Agreement was a binding contract between the parties. Per the terms of the December 2018 Employment Agreement, Plaintiff was eligible for a bonus for calendar years beginning in 2019.

31. Plaintiff provided extensive services to Defendant during the term of the December 2018 Employment Agreement, with the intention of receiving payment of his bonus in consideration therefor. Plaintiff received full bonus payments for calendar years 2019 and 2020 following his excellent performance in those years. In 2021, Plaintiff performed in a fully satisfactory manner, above and beyond the baseline expectations for his job, with the intention of being awarded a maximum bonus under the AZIP. In 2021, Defendant as a company did outstandingly well financially, taking in approximately $37 billion in revenues.

32. Defendant received considerable benefits from Plaintiff's performance, which contributed to the banner year that Defendant enjoyed as a company. Plaintiff's contributions

included work above and beyond those for which he received a salary, including logging long hours and dedicating frequent nights and weekends to Defendant. Defendant, however, failed and refused to pay Plaintiff the value of his 2021 bonus in the amount of $273,060.00.

33. As a consequence of Defendant's failure to pay the full value for services rendered by Plaintiff, and having received considerable benefits beyond amounts paid to Plaintiff, Plaintiff has suffered damages.

34. Defendant had knowledge of the benefit conferred upon it and knew that Plaintiff expected to be paid a bonus for excellent services rendered.

35. Defendant's acceptance and retention of the benefits conferred upon it by Plaintiff make it inequitable and unjust for Defendant to retain these benefits without payment of their value.

WHEREFORE, Plaintiff demands judgment against Defendant on Count I in the amount of $273,060.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT II
### Quantum Meruit – Implied-in-Fact Contract

36. Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each was set forth herein.

37. On about December 21, 2018, Plaintiff and Defendant executed the December 2018 Employment Agreement. Plaintiff believed that the December 2018 Employment Agreement was a binding contract between the parties. Per the terms of the December 2018 Employment Agreement, Plaintiff was eligible for a bonus for calendar years beginning in 2019.

38.     The December 2018 Employment Agreement in no way estopped or otherwise mitigated Plaintiff's ability to receive a bonus if he was not employed at the time such bonuses were actually paid.

39.     Both Plaintiff and Defendant understood, and had a meeting of the minds, that Plaintiff would receive a full bonus payout for all calendar years in which he provided services to Defendant regardless of whether he was still employed on the date that such bonus was actually paid.

40.     Indeed, Defendant would not have later amended its AZIP to require employment at the time bonuses are paid if it did not intend under the prior version for bonus payments to be made regardless of employment status.

41.     Plaintiff provided extensive services – beyond those for which he was paid a salary – to Defendant during the term of the December 2018 Employment Agreement, with the intention of receiving payment of his bonus in consideration therefor.

42.     Defendant received considerable benefits from Plaintiff's performance of work beyond that for which his salary compensated him throughout the entirety of the 2021 calendar year.  Defendant, however, has failed and refused to pay Plaintiff the value of his 2021 bonus in the amount of $273,060.00.

43.     As a consequence of Defendant's failure to pay the full value for services rendered by Plaintiff, and having received considerable benefits beyond amounts paid to Plaintiff, Plaintiff has suffered damages.

44.     Defendant had knowledge of the benefit conferred upon it and knew that Plaintiff had performed work beyond that for which he was already compensated with the expectation he would be paid his bonus.

45.     Plaintiff and Defendant, having mutually agreed and assented that Plaintiff would be entitled to a bonus award for rendering services above and beyond those for which his salary compensated him for any calendar year in which he worked regardless of whether Plaintiff remained employed at the time the bonus payment was scheduled to be made, created an implied-in-fact contract.

WHEREFORE, Plaintiff demands judgment against Defendant on Count II in the amount of $273,060.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT III
**Constructive Fraud**

46.     Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each was set forth herein.

47.     As Plaintiff's employer, Defendant owed Plaintiff the duty of good faith and fair dealing.  In accordance with Defendant's duty of good faith and fair dealing, Defendant was required to act honestly, fairly, and in good faith with respect to Plaintiff and the employment agreements between Plaintiff and Defendant.  Employers owe a duty of good faith and fair dealing to their employees with respect to the compensation employees may receive for the work they perform.  When they breach this duty, employers undermine their employees' ability to receive adequate compensation for the work they perform.

48.     As Plaintiff's employer, Defendant had a duty to notify Plaintiff of all modifications to Defendant's AZIP incentive plan or any other agreement affecting Plaintiff's compensation.

49.     Defendant breached its duty of good faith and fair dealing by, *inter alia*, modifying and/or changing its incentive plan without notice to Plaintiff.  Defendant's breach caused Plaintiff

10

to be unaware of a material change to the AZIP which directly affected the compensation Plaintiff could receive for his extraordinary work beyond that for which he was paid a salary.

50. Specifically, at no time during Plaintiff's employment did he ever become aware that Defendant had modified the AZIP to require that Plaintiff remain employed as of the payment date to receive his 2021 bonus. Defendant failed to notify Plaintiff of any such change.

51. In violation of its duty of good faith and fair dealing, Defendant concealed modifications to its AZIP plan that affected Plaintiff's ability to receive his 2021 bonus under the AZIP.

52. Defendant's conduct was deceptive, intentional, malicious, self-serving, and injured the public interest in ensuring employees are properly compensated for the work they perform and are aware of all conditions necessary to receive compensation from their employers.

53. As a proximate result of Defendant's fraudulent, deceptive, and malicious misconduct and breach of its duty to Plaintiff, Plaintiff has sustained harm and injury from the withholding of his 2021 bonus under the AZIP. Additionally, the public interest in ensuring employees are properly compensated for the work they perform and are aware of all conditions necessary to receive compensation from their employers has been harmed.

WHEREFORE, Plaintiff demands judgment against Defendant on Count III in the amount of $273,060.00, or such other amount as is proven at trial; punitive damages in an amount to be determined at trial to punish Defendant's wrongful, malicious, and deceptive misconduct; interest (both pre- and post-judgment); the costs of this action; and any other and further relief this Court deems appropriate.

## COUNT IV
### Negligent Misrepresentation

54. Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each was set forth herein.

55. Defendant owed Plaintiff a duty of care with respect to the agreements between them, namely the duty to notify Plaintiff of material changes in Defendant's AZIP which would affect Plaintiff's compensation.

56. Defendant, in representing that Plaintiff would receive a discretionary bonus, contingent in part upon Plaintiff's own performance, intended that Plaintiff would rely on this statement and attempt to meet or exceed Defendant's expectations so that he could receive his full target bonus.  As set forth above, Plaintiff believed, and his history with Defendant confirmed, that continued employment with Defendant through the date the bonus checks were issued was not a requirement of receiving his annual bonus for the previous year.

57. By failing to notify Plaintiff of a material change to the AZIP, namely that Plaintiff needed to remain employed until his previous year's bonus was paid, Defendant breached its duty to Plaintiff.

58. Defendant knew that Plaintiff, with no knowledge of any changes to the AZIP, would rely on the prior version of the AZIP and his past history and experience with Defendant and the award of bonuses, and would suffer loss.

59. Plaintiff, in reliance on the AZIP that Defendant had presented to him and with no knowledge of any modifications thereto, resigned his employment with Defendant following the end of calendar year 2021 in the justifiable belief that he would receive his full target bonus for 2021.

60. Had Defendant notified Plaintiff of the material change to the AZIP, requiring that Plaintiff be employed on the date that the bonus checks were issued, Plaintiff would have remained employed with Defendant and delayed the start of his new employment approximately six (6) weeks, until his 2021 bonus was paid.

61. Defendant's negligence in failing to notify Plaintiff of changes to the AZIP and allowing Plaintiff to believe he did not need to be employed to receive his bonus for 2021 is the direct and proximate cause of Plaintiff's loss.

WHEREFORE, Plaintiff demands judgment against Defendant on Count IV in the amount of $273,060.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

>Respectfully submitted,
>
>ZIPIN, AMSTER & GREENBERG, LLC
>
>By:   /s/ Philip B. Zipin
>Philip B. Zipin, Bar No. 03932
>8757 Georgia Avenue, Suite 400
>Silver Spring, MD 20910
>(301) 587-9373 (ph)
>(240) 839-9142 (fax)
>pzipin@zagfirm.com
>
>Anthony G. Bizien, Bar No. 20322
>45 Essex Street, Suite 3 West
>Hackensack, NJ 07601
>(301) 587-9373 (ph)
>(240) 839-9142 (fax)
>abizien@zagfirm.com
>
>*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on this 2nd day of May 2023, a true and correct copy of the foregoing Amended Complaint was served upon all counsel of record via this Court's ECF system.

                                                           /s/ Philip B. Zipin
                                                          Philip B. Zipin