**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

MARK LANASA, M.D., Ph.D.,

                    Plaintiff,

     v.

ASTRAZENECA PHARMACEUTICALS LP,

           Defendant.

Civil Action No.: 8:22-cv-01399-DLB

**DEFENDANT ASTRAZENECA PHARMACEUTICALS LP'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF RELEVANT FACTS ...................................................................... 3

III. PROCEDURAL HISTORY.......................................................................................... 5

IV. LEGAL STANDARD.................................................................................................. 6

V. ARGUMENT............................................................................................................... 8

    A. Plaintiff's Quantum Meruit – Unjust Enrichment Claim Still Fails as a Matter of Law for the Same Reasons as the Court Previously Held ..................... 8

    B. Plaintiff's Quantum Meruit Claim – Implied-In-Fact Contract is Barred by the Court's Prior Holding and Also Fails to State a Claim................................ 11

    C. Plaintiff's Constructive Fraud Claim Fails as a Matter of Law .......................... 13

    D. Plaintiff Fails to State a Claim for Negligent Misrepresentation........................ 16

VI. CONCLUSION.......................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*,
    917 F.3d 206 (4th Cir. 2019) ..................................................8

*Allen v. Hamilton*,
    80 F. Supp. 3d 241 (D.D.C. 2015) ..........................................18

*Ankerstjerne v. Schlumberger, Ltd.*,
    155 F. App'x 48 (3d Cir. 2005) ..........................................10, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................7

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*,
    451 Md. 600, 155 A.3d 445 (2017) .......................................17

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*,
    822 F. Supp. 2d 505 (D. Md. 2011) ......................................20

*Blanch v. Chubb & Son, Inc.*,
    No. 12-1965, 2012 WL 5471224 (D. Md. Nov. 8, 2012) ......................10

*Bowman v. City of Indianapolis*,
    133 F.3d 513 (7th Cir. 1998) ...........................................15

*Buxton v. Buxton*,
    770 A.2d 152 (Md. 2001) .............................................14

*Cagin v. McFarland Clinic, P.C.*,
    317 F. Supp. 2d 964 (S.D. Iowa 2004) ...................................15

*Call Carl, Inc. v. B.P. Oil Corp.*,
    554 F.2d 623 (4th Cir. 1977) ..........................................20

*Canaj, Inc. v. Baker and Division Phase III, LLC*,
    391 Md. 374, 893 A.2d 1067 (2006) ......................................14

*Cap. Ctr., LLC. v. Wilkinson*,
    No. 04-cv-182, 2006 WL 827375 (D. Md. Mar. 27, 2006) ....................16

*CBRE Fin. TRS, LLC v. McCormick*,
    No. 08-CV-1964, 2009 WL 4782124, at *6 (D. Md. Dec. 8, 2009)..............20

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) ........................................................................................................... 10

*Cooper v. Berkshire Life Ins. Co.*,
    810 A.2d 1045 (Md. Ct. Spec. App. 2002) ........................................................................ 18

*Doe v. Cath. Relief Servs.*,
    529 F. Supp. 3d 440 (D. Md. 2021) .................................................................................... 21

*Empire Realty Co. v. Fleisher*,
    269 Md. 278, 305 A.2d 144 (1973) ..................................................................................... 21

*Felichko v. Schechter*,
    No. CV RDB-18-1392, 2019 WL 1318109 (D. Md. Mar. 22, 2019) .................................... 14

*First Union Nat. Bank v. Steele Software Sys. Corp.*,
    154 Md. App. 97, 838 A.2d 404 (Md. Ct. Spec. App. 2003) ............................................... 20

*G.D. Searle & Co. v. Comm'r*,
    88 T.C. 252 (1987) ............................................................................................................... 9

*Goldstein v. Miles*,
    159 Md. App. 403, 859 A.2d 313 (2004) ........................................................................... 21

*Goode v. Am. Veterans, Inc.*,
    874 F. Supp. 2d 430 (D. Md. 2012) .................................................................................... 21

*Gordon v. Serv. of Am.*,
    120 F.3d 261, 1997 WL 414371 (4th Cir July 23, 1997) .............................................. 11, 13

*Graves v. Lioi*,
    930 F.3d 307 (4th Cir. 2019) .............................................................................................. 12

*Griesi v. Atl. Gen. Hosp. Corp.*,
    360 Md. 1, 756 A.2d 548 (2000) ........................................................................................ 17

*Hale Trucks of Maryland, LLC v. Volvo Trucks N. Am., Inc.*,
    224 F. Supp. 2d 1010 (D. Md. 2002) .................................................................................. 18

*Hernandez v. Creative Concepts, Inc.*,
    862 F. Supp. 2d 1073 (D. Nev. 2012) ................................................................................. 15

*Holloway v. Maryland*,
    32 F.4th 293 (4th Cir. 2022) ................................................................................................ 7

*Houck v. Substitute Tr. Servs., Inc.*,
    791 F.3d 473 (4th Cir. 2015) ................................................................................................ 7

*Int'l Refugee Assistance Project v. Trump*,
    961 F.3d 635 (4th Cir. 2020) .................................................................7

*J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*,
    No. 11-cv-1948, 2012 WL 4341582 (D. Md. Sept. 20, 2012).................17

*Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*,
    915 F.3d 256 (4th Cir. 2019) .................................................................7

*Katyle v. Penn Nat. Gaming, Inc.*,
    637 F.3d 462 (4th Cir. 2011) ............................................................6, 7

*Krysztofiak v. Bos. Mut. Life Ins. Co.*,
    No. CV DKC 19-879, 2022 WL 4290576 (D. Md. Sept. 16, 2022)........15

*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006) ............................................................6, 7

*Lavine v. Am. Airlines, Inc.*,
    No. 2917-2009, 2011 WL 13377948 (Md. Ct. Spec. App. Dec. 1, 2011) ..............18

*Lokhova v. Halper*,
    995 F.3d 134 (4th Cir. 2021) .................................................................7

*Lustine Chevrolet v. Cadeaux*,
    19 Md. App. 30, 308 A.2d 747 (1973).............................................18, 21

*Makowski v. Bovis Lend Lease, Inc.*,
    No. 10-1844, 2011 WL 1045635 (D. Md. Mar. 17, 2011) ....................10

*Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*,
    991 F.2d 94 (4th Cir. 1992) .................................................................17

*Mazer v. Safeway, Inc.*,
    No. 03-cv-3650, 2005 WL 3803372 (D. Md. Oct. 27, 2005) .................22

*Md. Envtl. Trust v. Gaynor*,
    370 Md. 89, 803 A.2d 512 (2002) .......................................................14

*Meerkreebs v. Astor & Sanders Corp.*,
    No. 17-cv-695, 2018 WL 1211539 (D. Md. Mar. 7, 2018) ....................20

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) ...............................................................15

*Moczulski v. Ferring Pharms., Inc.*,
    No. CV JKB-18-1094, 2018 WL 3496433 (D. Md. July 20, 2018) ........18

*Mogavero v. Silverstein*,
   142 Md.App. 259 (2002) ...................................................................................................11

*Mohiuddin v. Drs. Billing & Mgmt. Sols., Inc.*,
   196 Md. App. 439, 9 A.3d 859 (2010).....................................................................8, 9, 12, 13

*Musacchio v. United States*,
   577 U.S. 237 (2016)..........................................................................................................12

*Nasso v. Bio Reference Lab'ys, Inc.*,
   892 F. Supp. 2d 439 (E.D.N.Y. 2012) .............................................................................15

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) .............................................................................................7

*Pepper v. United States*,
   562 U.S. 476 (2011)..........................................................................................................12

*Percoco v. United States*,
   No. 21-1158, 2023 WL 3356527 (U.S. May 11, 2023) ...................................................14

*Planmatics, Inc. v. Showers*,
   137 F. Supp. 2d 616 (D. Md. 2001) .................................................................................15

*Ray v. Roane*,
   948 F.3d 222 (4th Cir. 2020) .............................................................................................8

*Schibursky v. Int'l Bus. Machines Corp.*,
   820 F. Supp. 1169 (D. Minn. 1993)...................................................................................9

*Sejman v. Warner-Lambert Co., Inc.*,
   845 F.2d 66 (4th Cir. 1988) .............................................................................................12

*Sheppard v. Visitors of Va. State Univ.*,
   993 F.3d 230 (4th Cir. 2021) .......................................................................................8, 19

*Slick v. Reinecker*,
   154 Md. App. 312 (2003) .................................................................................................11

*United States ex rel. Taylor v. Boyko*,
   39 F.4th 177 (4th Cir. 2022) .............................................................................................7

*TFWS, Inc. v. Franchot*,
   572 F.3d 186 (4th Cir. 2009) ...........................................................................................12

*Thompson v. UBS Financial Services, Inc.*,
   115 A.3d 125 (Md. 2015) .................................................................................................14

*Tobey v. Jones,*
    706 F.3d 379 (4th Cir. 2013) ......................................................................................8

*UBS Fin. Servs., Inc. v. Thompson,*
    94 A.3d 176 (MD 2014)............................................................................................15

*United States v. Lentz,*
    524 F.3d 501 (4th Cir. 2008) ...................................................................................12

*Wagner v. Econ. Rent-A-Car Corp.,*
    No. 19-cv-0180, 2020 WL 1033593 (D. Md. Mar. 3, 2020) ...................................17

*White v. Hewlett Packard Enterprise Co.,*
    985 F.3d 61 (1st Cir. 2021)......................................................................................11

*Williams v. Kincaid,*
    45 F.4th 759 (4th Cir. 2022) ......................................................................................7

*Wood v. Walton,*
    855 F. Supp. 2d 494 (D. Md. 2012) ..........................................................................14

**Other Authorities**

Rule 12(b)(6).........................................................................................................................7

Rule 15(a).............................................................................................................................3

I.    **INTRODUCTION**

The Court already ruled that Plaintiff Mark Lanasa ("Plaintiff") could not establish, as a matter of law, that AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "the Company") unlawfully refused to pay him a discretionary incentive award after he voluntarily resigned his employment with the Company.  Undaunted, Plaintiff has now filed a Motion for Leave to File an Amended Complaint (the "Motion") in which he seeks to resuscitate one of his dismissed claims and add three new ones.  Because Plaintiff's Motion is futile, the Court should deny it.

The alleged facts that led to the Court dismissing Plaintiff's claims have not changed. The incentive plan at issue clearly and expressly provided that AstraZeneca retained complete discretion whether to issue any incentive award and, if it did, to determine the amount of that award.  The incentive plan also set forth various requirements an employee must meet to be eligible for an award, including that AstraZeneca must employ the individual on the date that it issues the payment.  Plaintiff concedes that he did not meet this requirement because he voluntarily ended his employment before AstraZeneca issued the incentive payment.  Against that backdrop, each of Plaintiff's four causes of action in the proposed Amended Complaint fail as a matter of law.

First, Plaintiff's "Quantum Meruit – Unjust Enrichment" claim that the Court previously dismissed fails for the same reasons on which the Court based its prior ruling.  Specifically, Plaintiff's allegations make clear that he was paid handsomely for his services and while AstraZeneca paid him his salary, it simply did not pay him a discretionary bonus.  Those facts led the Court to hold "Lanasa cannot state a quantum meruit claim because he received a salary in exchange for his work and did not confer any benefit on AstraZeneca beyond what he contracted to provide."  ECF 20 at 15-16.  While Plaintiff could have added factual allegations in

the proposed Amended Complaint that would alter the Court's prior holding, he did not.  Instead, Plaintiff now alleges that he sometimes worked more than 50 hours in a week, which included nights and weekends.  But because Plaintiff was exempt under the Fair Labor Standards Act, his salary already compensated him for this alleged overtime work.  Therefore, the Court should once again find Plaintiff's Quantum Meruit – Unjust Enrichment fails as a matter of law.

The Court's prior holding likewise precludes Plaintiff's newly alleged Quantum Meruit Implied-in-Fact Contract claim.  Specifically, the Court held "[t]he discretionary nature of an award under the AZIP could not be clearer.  Lanasa was not promised a bonus in exchange for his work." *Id.* at 10.  But a Quantum Meruit Implied-in-Fact Contract claims requires an express or implied promise.  Because "Lanasa was not promised a bonus in exchange for his work," this claim fails at the outset.

Plaintiff's Constructive Fraud claim also fails as a matter of law.  To establish such a claim, Lanasa must plead and prove that a "confidential" or fiduciary relationship existed between him and AstraZeneca.  But Maryland has not recognized that employers and employees have a "confidential" or fiduciary relationship, and courts across the country hold no such relationship exists.  Without such a relationship, this claim is futile.

Finally, the Court should hold that Plaintiff's allegations fail to state a claim of Negligent Misrepresentation.  Indeed, Plaintiff's negligent misrepresentation claim fails because: (1) AstraZeneca did not owe Lanasa a duty of care regarding its alleged representations pertaining to the incentive plan; (2) AstraZeneca issued no affirmative false statement about the incentive plan or its administration; (3) AstraZeneca had no knowledge that Plaintiff would detrimentally rely on any alleged misrepresentation; (4) any reliance by Plaintiff on statements that AstraZeneca

made about the incentive program was unreasonable and not justified; and, (5) Lanasa cannot establish any alleged misrepresentation caused him harm.

In short, Plaintiff's claims fail as a matter of law for the reasons discussed above and below.  The Court should deny Plaintiff's Motion.

## II.      STATEMENT OF RELEVANT FACTS[1]

In or about May 2017, AstraZeneca hired Plaintiff as a Senior Director, Study Division. Am. Compl. ¶ 5; ECF 22-2.  AstraZeneca and Plaintiff signed an offer letter ("the May 2017 Offer Letter").[2] *Id.*[3]  The May 2017 Offer Letter provided in relevant part that Plaintiff would receive a specified base salary and would "be- eligible to participate in the AstraZeneca Incentive Plan (AZIP)."  Am. Compl. ¶ 5; ECF 8-2.  It also stated Plaintiff's annual incentive target percentage and specified that any incentive payment would be payable annually in March. *Id.*  Importantly, AstraZeneca expressly "reserve[d] the right to change the terms and conditions of employment, including the provisions of compensation and benefit programs, at any time." *Id.*

In December 2018, Plaintiff was promoted to Vice President, Global Development Lead, Immuno-Oncology.  Am. Compl. ¶ 11.  In connection with his promotion, Plaintiff signed a new

---

[1]     AstraZeneca accepts the allegations in the Amended Complaint as true—as it must under Rules 12(b)(6) and 15(a)—only for purposes of this Opposition but reserves the right to deny or refute any facts cited herein if the Court grants the Motion.

[2]     The Court previously held that the May 2017 Offer Letter, the December 2018 Offer Letter, and the 2021 AstraZeneca Incentive Plan, or AZIP, were integral to Plaintiff's claims and, thus, appropriately before the Court at this stage of the proceedings.  ECF 20 at 5, n.2.

[3]     Plaintiff refers to the May 2017 Offer Letter as "the May 2017 Employment Agreement." *Id.*

offer letter ("the December 2018 Offer Letter").[4]  ECF 8-3.  The December 2018 Offer Letter provided Plaintiff would receive a specified base salary, and, in addition, Plaintiff would "be eligible to participate in the relevant company short-term incentive plan.…"  *Id.*; Am. Compl. ¶ 11.  It also stated Plaintiff's annual incentive target percentage and specified that his "actual incentive award will be payable annually in March beginning in March 2020 ***in accordance with the terms and conditions of the Plan***."  *Id.* (emphasis added).  In this letter, AstraZeneca again expressly "reserve[d] the right to change the terms and conditions of employment, including the provisions of compensation and benefit programs, at any time."  *Id.*

The short-term incentive plan referenced in the December 2018 Offer Letter and applicable to Plaintiff from 2018 through 2021 was the AstraZeneca Incentive Plan ("AZIP" or the "Plan").  The AZIP stated that any incentive "[a]ward is a strictly discretionary and conditional payout" and that "[a] Participant shall have no contractual right to an Award."  ECF 9 at 5.  It further explained that "[t]he Participant's manager shall have complete discretion to determine whether a Participant will receive an Award and the amount of any such Award."  *Id.* Moreover, under the Plan, "[a]n Award shall not be earned until the Participant's manager has determined that an Award is due and payable and all the conditions of the Plan have been met." *Id.*

The AZIP further specified that "[a]n Employee must be actively employed by the Company . . . through the last day of the Plan Year and must meet the Active Service Requirement in order to be eligible to receive an Award for such Plan Year."  *Id.*  The Active Service Requirement on the very first page of the AZIP made clear that "the employee must be

---

[4]      Plaintiff refers to the December 2018 Offer Letter as "the December 2018 Employment Agreement."  *Id.*

actively employed at the time the bonus is paid in order to be eligible to receive their bonus award." *Id.* at 1.  Thus, in order to be eligible to receive any discretionary award under the AZIP for 2021, Plaintiff had to remain employed by AstraZeneca until the March 2022 payment date for any such award.  *Id.* at 1, 5.  Plaintiff chose to voluntarily resign on February 4, 2022.  Am. Compl. ¶ 18.  Pursuant to the Plan's terms, Plaintiff did not receive an incentive award payment in March 2022.  *Id.*; ECF 9.

Plaintiff alleges that AstraZeneca would have paid him a bonus of $273,060 if he had remained employed through March 2022.  Am. Compl. ¶ 27.  He arrived at that figure by alleging that he earned a salary of $370,000 in 2021, AstraZeneca utilized a "multiplier" of 1.64 that reflected its success in 2021, and that he was entitled to a short-term incentive bonus of 45% of his salary multiplied by that year's "multiplier."  *Id.*  Expressed formulaically, 45% x $370,000 = $166,500; $166,500 x 1.64 = $273,060.

## III.   <u>PROCEDURAL HISTORY</u>

Plaintiff filed the Complaint in this Action on April 4, 2022, alleging the following claims: (1) Violation of the Maryland Wage Payment Collection Act ("MWPCL"); (2) Breach of Contract, and, (3) Quantum Meruit/Unjust Enrichment.  Compl. ¶¶ 16-32.  On June 15, 2022, AstraZeneca moved to dismiss the Complaint on the grounds that it failed to state a claim.  ECF 8.  Plaintiff filed his Opposition on July 19, 2022, *see* ECF 16, and AstraZeneca filed its Reply on August 16, 2022, *see* ECF 17.

On March 15, 2023, the Court granted AstraZeneca's Motion to Dismiss.  ECF 21.  In its Memorandum Opinion, the Court first dismissed with prejudice Plaintiff's MWPCL and Breach of Contract claims.  ECF 20.  The Court held that the "bonus Lanasa seeks does not constitute a wage under the MWPCL," in part because "AstraZeneca reserved the absolute discretion to grant or deny an award in the first instance." *Id.* at 10-11.  Regarding the Breach of Contract Claim,

the Court first reasoned that the "discretionary language" in the AZIP rendered any promise to pay a bonus illusory and, thus, no promise that could form a binding obligation existed. *Id.* at 12.  The Court next held that no consideration existed because "[w]hen incentive pay is offered to an employee for performing work that they were already obligated to perform, there is no consideration, and no legal obligation to pay a bonus." *Id.*

Turning to the Quantum Meruit Claim, the Court dismissed it without prejudice. *Id.* at 14-16.  The Court analyzed Plaintiff's Quantum Meruit claim under a "quasi-contractual theory," "which is identical to unjust enrichment" under Maryland law. *Id.* at 15.  The Court dismissed Plaintiff's Quantum Meruit claim because "he received a salary in exchange for his work and did not confer any benefit on AstraZeneca beyond what he was contracted to provide." *Id.* at 15-16. The Court then entered judgment in AstraZeneca's favor.  ECF 21.

On May 5, 2023, Plaintiff filed the Motion to "amend his pleadings to add additional support to his Quantum Meruit –Unjust Enrichment claim and add additional claims for Quantum Meruit –Implied-in-Fact Contract, Constructive Fraud, and Negligent Misrepresentation."  ECF 22.  Because Plaintiff's claims as alleged in the proposed Amended Complaint still fail as a matter of law, which renders the Motion futile, AstraZeneca filed this Opposition.

## IV.   <u>LEGAL STANDARD</u>

Even though Plaintiff filed the Motion after the Court entered judgment against him, the Court should evaluate the "motion to amend the complaint 'under the same legal standard as a similar motion filed before judgment was entered[.]'" *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *Laber v. Harvey,* 438 F.3d 404, 427 (4th Cir. 2006)).  In other words, the Court should deny the Motion if it "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been

futile." *Laber,* 438 F.3d at 426.  "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards"—that is, if it "fails to satisfy the requirements of the federal rules." *Katyle*, 637 F.3d at 471 (internal quotation marks omitted).

Regardless of whether challenged under Rule 12(b)(6) or on futility grounds, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper,* 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland,* 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump,* 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal,* 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.,* 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir. 2015)).

When weighing whether a complaint states a claim, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid,* 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'." *United States ex rel. Taylor v. Boyko,* 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.,* 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's

elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.,* 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.,* 917 F.3d 206, 212 (4th Cir. 2019)).  The Court "'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'" *Ray v. Roane,* 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones,* 706 F.3d 379, 387 (4th Cir. 2013)).

## V.   ARGUMENT

### A.   Plaintiff's Quantum Meruit – Unjust Enrichment Claim Still Fails as a Matter of Law for the Same Reasons as the Court Previously Held

Plaintiff first attempts to resuscitate his claim for "Quantum Meruit – Unjust Enrichment" that the Court previously dismissed without prejudice.  Am. Compl. ¶¶ 29-35.  As explained below though, Plaintiff's new allegations in no way change the Court's prior holding that "Lanasa cannot state a quantum meruit claim because he received a salary in exchange for his work and did not confer any benefit on AstraZeneca beyond what he was contracted to provide." *Id.* at 15-16.

As previously noted by the Court, to plead a claim for unjust enrichment, a plaintiff must allege (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  *Mohiuddin v. Drs. Billing & Mgmt. Sols., Inc.*, 196 Md. App. 439, 449, 9 A.3d 859, 865 (2010).  To survive a motion to dismiss, it is not sufficient for a plaintiff to plead in bald and conclusory fashion that it would be "inequitable for [the defendant] to retain th[e alleged] benefits without payment of their value."  *Id.* at 866.  Rather, a plaintiff must plead facts showing that the defendant "was enriched as a result of circumstances, such as

fraud or misrepresentation, that might make it inequitable for the company to retain the value of appellant's services without paying for them." *Id.*

Plaintiff has pled no such facts here.  Just like the plaintiff in *Mohiuddin*, Plaintiff baldly alleges that "Defendant's acceptance and retention of the benefits conferred upon it by Plaintiff make it inequitable and unjust for Defendant to retain these benefits without payment of their value." Am. Compl. ¶ 32.  Plaintiff has pled no actual factual averments showing any fraud or misrepresentation that could prove any inequity.  To the contrary, all of the facts pled, and the documents upon which they are based, show that AstraZeneca acted entirely consistently with its obligations under the December 2018 Offer Letter and the AZIP.  Moreover, it remains undisputed that AstraZeneca did pay Plaintiff handsomely for his services.  He merely did not receive a discretionary bonus in an alleged amount.  Dismissal is warranted in these circumstances.  *Mohiuddin*, 196 Md. App. at 450 (dismissing complaint with similar allegations).

Plaintiff attempts to avoid this straightforward conclusion by including a new allegation that he "regularly and customarily worked more than 50 hours per week including frequent nights and weekends."  Am. Compl. ¶ 15.  Plaintiff, however, worked as Vice President, Global Development Lead, Immuno-Oncology.  *Id.* ¶ 11.  Unsurprisingly, that position is exempt from the Fair Labor Standards Act, meaning AstraZeneca did not need to provide **extra** compensation on top of his generous salary for any overtime work on "night and weekends."  *Cf. Schibursky v. Int'l Bus. Machines Corp.*, 820 F. Supp. 1169, 1172 (D. Minn. 1993) ("scientists are all exempt employees who need not worry about nor report overtime"); *G.D. Searle & Co. v. Comm'r*, 88 T.C. 252, 376 (1987) ("Exempt employees included research and development scientists and administrators").  As the U.S. Supreme Court recognized, exempt employees may be, like Plaintiff, "well paid" and those same individuals can also "often work more than 40 hours per

week." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012) (discussing pharmaceutical representatives).  At bottom, because he was an exempt employee, Plaintiff's salary already compensated him for the times "he worked more than 50 hours per week . . . ." Plaintiff does not allege otherwise.

Moreover, this Court has already dismissed an unjust enrichment claim nearly identical to Plaintiff's.  In *Makowski v. Bovis Lend Lease, Inc.*, No. 10-1844, 2011 WL 1045635, at *3 (D. Md. Mar. 17, 2011), this Court held that a plaintiff failed to state an unjust enrichment claim regarding his purported entitlement to an "Annual Incentive Compensation Bonus."  In *Makowski*, like here, whether the company would pay any discretionary bonus, and, if it did, the amount of that bonus, turned on numerous factors, such as the individual and company's performance.  *Id.*  When the plaintiff in *Makowski* asserted an unjust enrichment claim after the company did not pay him his annual bonus, this Court dismissed that claim outright.  It reasoned the plaintiff, like Lanasa here, had not alleged a colorable claim for that bonus.

This Court also dismissed a similar claim where an employee alleged a company, following the employee's terminations, withheld a "performance bonus" that he earned.  *Blanch v. Chubb & Son, Inc.*, No. 12-1965, 2012 WL 5471224, at *1, *6 (D. Md. Nov. 8, 2012).  The company continued to withhold the bonus despite the plaintiff's multiple requests.  *Id.*  The Court reasoned that the plaintiff's allegations, like Lanasa's here, amounted to nothing more than blanket conclusions of law without any facts that would show he was entitled to relief.

This Court's holdings dismissing claims of unjust enrichment based upon a bonus allegedly not being paid mirror holdings from across the country.  For example, the Third Circuit Court of Appeals affirmed dismissal of a claim of unjust enrichment where a plaintiff alleged that that he was due an additional bonus.  *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48,

52 (3d Cir. 2005).  The court reasoned that the plaintiff had "not shown that he provided the defendants with anything more than the work he was hired to do."  *Id.*  The First Circuit Court of Appeals held similarly.  In *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 69-70 (1st Cir. 2021), the First Circuit held that where the "terms of [plaintiff's] employment were first set out in an offer letter" and the work Plaintiff performed "fell squarely within [those] employment agreements," his claims of quantum meruit/unjust enrichment regarding an unpaid bonus were "meritless."  The same holds true here.  Plaintiff has not alleged that he provided AstraZeneca any benefit other than the work—which sometimes included overtime—that he was hired to do. Likewise, Plaintiff has not alleged any inequities that would require AstraZeneca to pay him a bonus on top of the generous salary he already earned.  In short, his claim of unjust enrichment fails as a matter of law.

**B.     Plaintiff's Quantum Meruit Claim – Implied-In-Fact Contract is Barred by the Court's Prior Holding and Also Fails to State a Claim**

Plaintiff now seeks to assert a quantum meruit claim based on an implied-in-fact contract. An implied-in-fact contract is a "true contract" and "means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words."  *See Slick v. Reinecker*, 154 Md. App. 312, 317 (2003) (citing *Mogavero v. Silverstein*, 142 Md.App. 259, 275 (2002)). "Implied-in-fact contracts are 'dependent on mutual agreement or consent, and on the intention of the parties; and a meeting of the minds is required.'"  *Id.*  The Court's prior ruling clearly foreclosed this claim and, even if it did not, Plaintiff's allegations fall well short of establishing any entitlement to relief.

To succeed on a quantum meruit claim based on an implied contract, a plaintiff must plead facts showing "an express or implied agreement to pay for the services."  *Gordon v. Serv. of Am.*, 120 F.3d 261, 1997 WL 414371, at *2 (4th Cir July 23, 1997).  Here though, the Court

already held that there was no "express or implied" promise to pay the 2021 bonus.  Specifically, the Court held "[t]he discretionary nature of an award under the AZIP could not be clearer. Lanasa was not promised a bonus in exchange for his work."  ECF 20 at 10.  That holding is the law of the case.

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)*; see also Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).  The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).

Undoubtedly, the Court's prior holding that "Lanasa was not promised a bonus in exchange for his work" forecloses his quantum meruit claim based on an implied-in-fact contract, because that claim **requires** a "promise."  The Court's prior holding, thus, renders Plaintiff's attempt to allege this claim in the proposed Amended Complaint futile.

Even without the Court's prior holding, Plaintiff could not establish the requisite elements of this claim.  Where a complaint fails to allege that the defendant agreed to make the payment allegedly owed, the quantum meruit claim is subject to dismissal.  *Mohiuddin*, 196 Md. App. at 448.  In *Mohiuddin*, for example, a physician claimed he performed work for a hospital and expected to be paid for those services, and that the hospital accepted the benefit of his services knowing he expected to be paid.  *Id.*  The court affirmed dismissal of his quantum

meruit claim because the complaint lacked any allegation that the hospital agreed to pay him the compensation that he alleged he was owed. *Id.*

By way of further example, in *Gordon*, the plaintiffs made a similar claim under an incentive plan that conditioned payment on continued employment through the calculation period. *Id.* at *1. The employer sold its operations and separated all employees from employment in connection with the sale before the calculation period ended. *Id.* at *2. The employees did not receive incentive payments and filed suit, alleging MWPCL and quantum meruit claims. *Id.* at *1. The Fourth Circuit affirmed dismissal of the claims, holding that the incentive plan "clearly indicated the circumstances under which [the employer] would and would not make payment" and thus the employees' quantum meruit claim failed as a matter of law. *Id.* at *2. The mere fact that the employees "worked hard at their jobs and expected to be paid" could not support a viable claim. *Id.*

Here, Plaintiff bases his quantum meruit claim on the allegation that he believed the December 2018 Offer Letter "was a binding contract between the parties" that somehow guaranteed him an incentive award for 2021. Am. Compl. ¶¶ 37-38. But just like in *Gordon*, the terms of the December 2018 Offer Letter and the AZIP incorporated in the letter clearly delineate the circumstances in which AstraZeneca PLP would and would not make incentive award payments. *See supra* at 3-4. Plaintiff fails to plead any express or implied agreement to pay the incentive award in the manner he claims, and the Court should determine his quantum meruit claim is futile.

**C.**    <u>**Plaintiff's Constructive Fraud Claim Fails as a Matter of Law**</u>

Plaintiff next futilely attempts to allege a claim of constructive fraud. He cannot establish this claim for the simple fact that he has not and cannot allege that AstraZeneca owed him a legal or equitable duty to pay him a bonus or inform him of changes to the AZIP. Plaintiff

-13-

cannot establish that duty in part because AstraZeneca, his employer and principal, was not in a "confidential relationship" or a fiduciary relationship with Plaintiff, its employee and agent.

"Constructive fraud" is defined under Maryland law as a "'breach of a legal or equitable duty which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Canaj, Inc. v. Baker and Division Phase III, LLC*, 391 Md. 374, 421–22, 893 A.2d 1067 (2006) (quoting *Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 98, 803 A.2d 512 (2002)) (some quotation marks omitted) (emphasis omitted).  Courts applying Maryland law hold that a "defendant owes an equitable duty to a plaintiff where the parties are in a confidential relationship," *i.e.*, a relationship which exists "where the defendant 'has gained the [plaintiff's] confidence . . . and purports to act or advise with the [plaintiff's] interest in mind.'" *Thompson v. UBS Financial Services, Inc.*, 115 A.3d 125, 138 (Md. 2015) (quoting *Buxton v. Buxton*, 770 A.2d 152, 164 (Md. 2001).  In other words, a plaintiff must plead a confidential or fiduciary relationship for their constructive fraud claim to survive a motion to dismiss.  *See Felichko v. Schechter*, No. CV RDB-18-1392, 2019 WL 1318109, at *14 (D. Md. Mar. 22, 2019) (dismissing constructive fraud claim where plaintiff did not allege fiduciary relationship).

Here, AstraZeneca and Plaintiff were neither in a fiduciary nor "confidential relationship."  Under the Restatement of Agency, which "Maryland courts have cited with approval," *Wood v. Walton*, 855 F. Supp. 2d 494, 499 (D. Md. 2012) (citing cases), principals do not owe their agents fiduciary duties, *see* Restatement (Third) of Agency, §§ 8.13-8.15 (outlining duties of principles to agents).[5]  Likewise, courts that have examined the issue have found that a

---

[5]      Agents, though, do owe their principles fiduciary duties. *See Percoco v. United States,* No. 21-1158, 2023 WL 3356527, at *6 (U.S. May 11, 2023) (citing Restatement (Third) of Agency, § 1.01 Comment e, p. 23 (2005)).  Because they are agents of their employers,

"confidential relationship generally does not arise from the employer-employee relationship."

*Hernandez v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1094 (D. Nev. 2012) (applying NV

law); *see also Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 621 (9th Cir. 2004) ("No

presumption of a confidential relationship arises from the bare fact that parties to a contract are

employer and employee") (applying CA law); *Bowman v. City of Indianapolis,* 133 F.3d 513,

519 (7th Cir. 1998) (holding the relationship between an employer and its employees is not a

"confidential relationship" for purposes of Indiana law); *Nasso v. Bio Reference Lab'ys, Inc.*,

892 F. Supp. 2d 439, 453 (E.D.N.Y. 2012) ("Plaintiff, a sophisticated businessman with a

medical degree, cannot allege the existence of such a confidential relationship on the basis of his

employer-employee relationship") (applying NY law); *Cagin v. McFarland Clinic, P.C.*, 317 F.

Supp. 2d 964, 969 (S.D. Iowa 2004) (holding no "confidential relationship" exists between

employer and employee and collecting cases). That no "confidential relationship" existed

between AstraZeneca and Plaintiff makes perfect sense. Those types of relationships exist under

Maryland law only when one party expects the other to act in their best interest, *e.g.*, attorney-

client, doctor-patient. *UBS Fin. Servs., Inc. v. Thompson*, 94 A.3d 176, 186 (MD 2014) (noting

confidential relationship exists where one party "must necessarily repose trust and confidence in

the good faith and integrity of the other"). But employers generally are not obligated to act in

the best interests of employees like attorneys must do for their clients and doctors must do for

their patients. In fact, employers may legally take a wide array of actions that are detrimental to

their employees' interests, for example by "unilaterally terminat[ing] or modif[ying] previously

offered benefits that are not vested." *Krysztofiak v. Bos. Mut. Life Ins. Co.*, No. CV DKC 19-

---

employees owe their employers fiduciary duties under Maryland law. *Planmatics, Inc. v.
Showers*, 137 F. Supp. 2d 616, 626 (D. Md. 2001) (stating "specific fiduciary duties [are]
imposed upon employees by Maryland law").

879, 2022 WL 4290576, at *6 (D. Md. Sept. 16, 2022).  In the end, AstraZeneca owed no legal or equitable duty to Plaintiff regarding the 2021 bonus or the AZIP.

Undeterred, Plaintiff alleges that AstraZeneca owed him "the duty of good faith and dealing" and breached this duty by not notifying him of the modification to the AZIP.  Am. Compl. ¶¶ 47-51.  Plaintiff does not allege where this duty originated or why it existed in these circumstances.  It certainly does not stem from the terms of the AZIP or the relationship of the parties.  Whatever Plaintiff may later identify as the source of this alleged duty, the Court already held AstraZeneca did not owe Plaintiff a duty and good faith and dealing regarding the administration of the AZIP.  ECF 20 at 14.  That is because the Plan gave AstraZeneca "uncontrolled discretion."  *Id.*

Ultimately, Plaintiff has not plausibly alleged that AstraZeneca and he were in a confidential or fiduciary relationship.  As a result, his constructive fraud claim is futile.

### D.    Plaintiff Fails to State a Claim for Negligent Misrepresentation

Plaintiff also cannot maintain his negligent misrepresentation claim because his allegations do not establish the requisite elements of this claim.  To survive a motion to dismiss on a claim for negligent misrepresentation, a plaintiff must allege facts sufficient to show:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant knows that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff justifiably takes action in reliance on the statement; and (5) the plaintiff suffers damages proximately caused by the defendant's negligence.

*See Cap. Ctr., LLC. v. Wilkinson*, No. 04-cv-182, 2006 WL 827375, at *9 (D. Md. Mar. 27, 2006).  Plaintiff's allegations fail to establish each element.

As to the first element, Plaintiff cannot establish that AstraZeneca owed him a duty of care regarding its alleged representations pertaining to the AZIP.  While Maryland law

recognizes a duty of potential employers not to make material misrepresentations during pre-employment negotiations that involve "intensive communications," *see Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 19, 756 A.2d 548, 557 (2000),[6] "Maryland law does not recognize a negligence claim arising from the failure to pay wages," *see Wagner v. Econ. Rent-A-Car Corp.*, No. 19-cv-0180, 2020 WL 1033593, at *5 (D. Md. Mar. 3, 2020).  In other words, Maryland law has not recognized a duty of employers to pay them wages if they do not communicate to current at-will employees changes to a fully discretionary bonus plan.  In fact, courts applying Maryland law often reject negligent misrepresentation claims when a plaintiff's "theory rests on statements made after the parties reached their contract."  *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 99 (4th Cir. 1992); *see also J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, No. 11-cv-1948, 2012 WL 4341582, at *9 (D. Md. Sept. 20, 2012) (collecting cases).

Even if Plaintiff could establish a duty that AstraZeneca owed him regarding its AZIP-related communications, he has not alleged AstraZeneca issued any affirmative false statement

---

[6]     The Maryland Court of Appeals summarized its holding in *Griesi* as follows:

> The hospital's CEO had extended a job offer to a physical therapist, which he accepted. *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 6, 756 A.2d 548 (2000). But when he appeared at the hospital on his start date, he was told that the hospital used outside contractors for its physical therapy services and, consequently, no position was available for him. *Id.* at 7–8, 756 A.2d 548. We concluded that "intensive communications," including an in-person interview, several telephone conversations, and oral and written job offers communicating a starting date and salary, established an intimate nexus. *Id.* at 16, 756 A.2d 548. In our analysis, we "weigh[ed] heavily" that the hospital "had exclusive control" of material information the physical therapist needed to understand the situation, but never disclosed this information.  *Id.* at 17, 756 A.2d 548. We also found important the physical therapist's reliance on the CEO's "positive and unequivocal representations of an employment opportunity" and his "authority, or apparent authority," to make a job offer.  *Id.*

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 620, 155 A.3d 445, 456 (2017).

about the AZIP or its administration.  Yet the claim of "negligent misrepresentation focuses on affirmative statements made by the defendant that were intended to, and indeed, had the effect of, inducing the plaintiff to carry out some action in reliance on the false statements."  *Moczulski v. Ferring Pharms., Inc*., No. CV JKB-18-1094, 2018 WL 3496433, at *3 (D. Md. July 20, 2018).  Without an "affirmative false statement," Lanasa's claim fails.

Further establishing the futility of his negligent misrepresentation claim, Maryland law holds that "predictive statements of future events," such as those Lanasa alleges, are generally not actionable.  *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1064 (Md. Ct. Spec. App. 2002).  In other words, ordinarily a plaintiff cannot maintain a negligent misrepresentation claim based on the "unfulfillment of promises or the failure of future events to materialize as predicted."  *Hale Trucks of Maryland, LLC v. Volvo Trucks N. Am., Inc.*, 224 F. Supp. 2d 1010, 1032 (D. Md. 2002); *see also Allen v. Hamilton*, 80 F. Supp. 3d 241, 246 (D.D.C. 2015) (holding same and applying Maryland law).  Here, Plaintiff alleges that he and AstraZeneca "mutually agreed and assented that Plaintiff would be entitled to a bonus award . . . . for any calendar year in which he worked regardless of whether Plaintiff remained employed at the time the bonus payment was scheduled to be made . . . "  Am. Comp. ¶ 45.  Thus, Plaintiff's allegations amount to nothing more than the "failure of future events to materialize as predicted," which cannot form the basis of a negligent misrepresentation claim.  *Hale*, 224 F. Supp. At 1032.

Lanasa also has not plausibly alleged that AstraZeneca intended him to "perform the act from which the injury resulted . . . ." *Lavine v. Am. Airlines, Inc.*, No. 2917-2009, 2011 WL 13377948, at *6 (Md. Ct. Spec. App. Dec. 1, 2011) (quoting *Lustine Chevrolet v. Cadeaux*, 19 Md. App. 30, 35, 308 A.2d 747 (1973)).  Regarding this element of his claim, Lanasa only conclusory contends that "Defendant . . . intended that Plaintiff would rely on this statement and

attempt to meet or exceed Defendant's expectations so that he could receive his full target bonus." Am. Compl. ¶ 56. Even if the allegation was not a bald legal conclusion couched as a fact (which it is), that allegation completely misses the mark. Plaintiff "attempt[ing] to meet or exceed Defendant's expectations" did not cause him harm. Resigning from AstraZeneca purportedly did. Am. Compl. ¶ 59. But Plaintiff has not alleged AstraZeneca intended him to resign, nor could he. That is because AstraZeneca implemented the AZIP, in part, to attract and **retain** employees such as Plaintiff.

In the same vein, Plaintiff has not plausibly alleged that AstraZeneca had knowledge that he would "probably rely on the statement, which, if erroneous, will cause loss or injury." Plaintiff alleges that AstraZeneca knew that he "would rely on the prior version of the AZIP and his past history and experience with Defendant and the award of bonuses, and would suffer loss." Am. Compl. ¶ 58. That allegation is implausible for numerous reasons. For example, AstraZeneca repeatedly informed Plaintiff that he should **not** rely on any version of the AZIP because it "reserve[d] the right to change the terms and conditions of employment, including the provisions of compensation and benefit programs, at any time." ECF 5. Also rendering this allegation implausible, in order for AstraZeneca to know that Plaintiff would likely "suffer a loss" at the time it made the alleged misrepresentations, it would have had to have known that he intended to resign prior to March 2022. Otherwise, even if the alleged statements induced him to perform at his best, he would have suffered no injury. Plaintiff simply has not alleged that AstraZeneca knew anything about the timing of his impending resignation at the time it allegedly made the misrepresentations. Plaintiff, thus, merely recites this claim's "loss" element and supports it solely with conclusory facts, which "does not meet the required standard." *Sheppard v.,* 993 F.3d at 234.

Plaintiff's allegations also establish that his purported reliance on the alleged misrepresentations was not justified.  Under Maryland law, for a plaintiff to justifiably rely on a statement, the plaintiff must "reasonably believe in the 'full truth' of the misrepresentation." *Meerkreebs v. Astor & Sanders Corp.*, No. 17-cv-695, 2018 WL 1211539, at *5 (D. Md. Mar. 7, 2018) (quoting *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536–37 (D. Md. 2011)).  When the plaintiff is party to a written contract, he "cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract" he signed.  *Meerkreebs*, 2018 WL 1211539, at *5 (quoting *Bank of Am.*, 822 F. Supp. 2d at 536-37). In other words, a plaintiff cannot justifiably rely on oral statements if the subsequent written agreement contradicts the statement.  *See*, *e.g.*, *id.* (quoting *CBRE Fin. TRS, LLC v. McCormick*, No. 08-CV-1964, 2009 WL 4782124, at *6 (D. Md. Dec. 8, 2009)); *see also Call Carl, Inc. v. B.P. Oil Corp.*, 554 F.2d 623, 631 (4th Cir. 1977) (concluding that franchisees' reliance on franchisor's pre-contractual oral representation that it would not exercise the non-renewal option in a franchise agreement was unreasonable where the franchise agreement expressly made the contract non-renewable); *First Union Nat. Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 136, 838 A.2d 404, 427 (Md. Ct. Spec. App. 2003) (holding that a party could not have reasonably relied on certain representations because "they contradict the express terms of the [contract]").  Here, Plaintiff's reliance is unreasonable and not justified because the terms of AZIP expressly state that individuals must be employed on the date AstraZeneca paid bonuses. Put differently, given the alleged subsequent written agreement, *i.e.* the AZIP, contradicts the statements on which Lanasa relies, any reliance on those statements was unreasonable and not justified.  *See supra*.  Further, AstraZeneca repeatedly informed Plaintiff in writing that he might not receive a bonus and that it may change the terms of the AZIP.  Thus, any purported reliance

on oral statements to the contrary was unreasonable.  *See Goldstein v. Miles*, 159 Md. App. 403,

437, 859 A.2d 313, 333 (2004) (holding purported reliance on "nebulous representations"

unreasonable and unjustified).

Further, this Court rejected a claim nearly identical to Plaintiffs.  In *Doe v. Cath. Relief

Servs.*, 529 F. Supp. 3d 440, 452 (D. Md. 2021), this Court held that because "the representation

was as to [the employer's] existing polices and not as to whether those policies would continue

without any modification, the plaintiff could not have justifiably relied" on the alleged

misrepresentation to believe that those benefits would always continue.  In this matter, Plaintiff

alleges that he believed that he would receive a discretionary bonus even if he was no longer

employed with AstraZeneca because AstraZeneca's "historical policy" was to administer the

AZIP in that manner.  Am. Compl. ¶¶ 20-23.  But like the plaintiff in *Doe*, Lanasa does not point

to any statement that this practice "would continue without any modification" in the future.  At

bottom, "it is patently unreasonable to rely on oral statements directly contradicting several

explicit, written statements" regarding AstraZeneca's ability to amend or terminate the AZIP.

*Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 455 (D. Md. 2012)

Finally, Plaintiff has not plausibly alleged that any statement by AstraZeneca was the

proximate cause of a lost.  Generally, "one may recover only those damages that are

affirmatively proved with reasonable certainty to have resulted as the natural, proximate and

direct effect of the injury." *Empire Realty Co. v. Fleisher*, 269 Md. 278, 284, 305 A.2d 144

(1973) (internal citations omitted).  In the case of a misrepresentation, "the plaintiff must show

not only that he would not have performed the act from which the injury resulted but for the

misrepresentation, but also that the fact misrepresented was the proximate cause of the injury."

*Lustine Chevrolet*, 19 Md. App. at 35.  As noted above, Plaintiff's purported injury stemmed

-21-

from his resignation prior to March 2022 and not any statement to him that promised or otherwise guaranteed that he would be paid a bonus if he were not employed at that time.  To the contrary, Lanasa "could not expect a bonus in exchange for work," regardless of when he resigned, "because he did not know whether he would ever receive a bonus."  *Mazer v. Safeway, Inc.*, No. 03-cv-3650, 2005 WL 3803372, at *12 (D. Md. Oct. 27, 2005).

## VI.    <u>CONCLUSION</u>

For these reasons, AstraZeneca respectfully requests that the Court deny Plaintiff's Motion for Leave to File an Amended Complaint.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: May 30, 2023

*/s/ Brandon J. Brigham*
Matthew J. Sharbaugh (Bar No. 18942)
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
matthew.sharbaugh@morganlewis.com

Sarah E. Bouchard (admitted *pro hac vice*)
Brandon J. Brigham (admitted *pro hac vice*)
Lauren E. Marzullo (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
sarah.bouchard@morganlewis.com
brandon.brigham@morganlewis.com
lauren.marzullo@morganlewis.com

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| |
|---|
| MARK LANASA, M.D., Ph.D., |
| Plaintiff, |
| |
| v. |
| |
| ASTRAZENECA PHARMACEUTICALS LP, |
| Defendant. |

Civil Action No.: 22-cv-1399

### [PROPOSED] ORDER

This matter is before the Court on a Motion for Leave to File an Amended Complaint ("Motion"), and proper notice having been given, and the Court having considered the written submissions of the parties, and any oral argument of counsel, and good cause appearing therefore,

**IT IS** on this _____ day of _____ 2023,

**ORDERED** that Plaintiff Mark Lanasa's Motion is hereby **DENIED** in its entirety.

_____
The Honorable Deborah L. Boardman, U.S.D.J.

-1-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a copy of the foregoing was filed via the ECF filing system and therefore served on all counsel of record.


Dated: May 30, 2023                              *<u>Brandon J. Brigham</u>*
                                                 Brandon J. Brigham