IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK LANASA, M.D., Ph.D.,                    *
                                             *
              Plaintiff,                      *
                                             *
       v.                                    *      Case No. 8:22-cv-01399-DLB
                                             *
ASTRAZENECA PHARMACEUTICALS LP,              *
                                             *
              Defendant.                      *

*********************************************************************

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff Mark Lanasa ("Plaintiff"), by and through his undersigned counsel hereby files this Reply in further support of his Motion for Leave to File an Amended Complaint against Defendant AstraZeneca Pharmaceuticals, LP ("Defendant") states as follows:

## STATEMENT OF FACTUAL ALLEGATIONS

Plaintiff began his employment with Defendant in about December 2017, when he was hired as Senior Director, Study Division.  Am. Compl. ¶ 5.  Pursuant to a written employment agreement dated May 11, 2017 (the "May 2017 Employment Agreement"), Plaintiff was to receive a salary and was advised that he would be "eligible to participate in the AstraZeneca Incentive Plan" ("AZIP").  *Id*.  The AZIP states that Plaintiff's "annual incentive target will be 40% of [his] actual base earnings for the bonus plan year payable annually in March beginning in March 2018."  Am. Compl. ¶ 6.  Under the AZIP, Plaintiff was not required to be employed at the time bonus payments were made.  Am. Compl. ¶ 7.

Under the May 2017 Employment Agreement, Plaintiff was also eligible for receive a sign-on bonus, payable in three installments.  Am. Compl. ¶ 9.  Unlike annual bonus payments under

the AZIP, payments of the sign-on bonus installments were "[c]ontingent upon continued employment with AstraZeneca." Am. Compl. ¶¶ 9-10.

In December 2018, Plaintiff was promoted to Vice President, Global Development Lead, Immuno-Oncology and Plaintiff and Defendant executed a new employment agreement (the "December 2018 Employment Agreement"). *Id.* Pursuant to the terms of the December 2018 Employment Agreement, Plaintiff was to receive an annual salary and was eligible for an annual incentive award under the AZIP. *Id.* The December 2018 Employment Agreement did not condition receipt of a bonus award on continued employment. Am. Compl. ¶ 12.

Understanding that superior performance would earn him a larger bonus, Plaintiff went above and beyond in his employment with Defendant. Am. Compl. ¶ 14. Without the prospect of receiving a bonus, Plaintiff would not have dedicated this level of commitment to Defendant. *Id.* Because of Plaintiff's prospective bonus, Plaintiff performed duties that went beyond the requirements for his position. *Id.* For example, throughout 2021, Plaintiff regularly and customarily worked more than 50 hours per week, including frequent nights and weekends. Am. Compl. ¶ 15. Plaintiff spent these long hours for the benefit of Defendant with the expectation that such efforts would be rewarded through a maximum bonus award. *Id.*

On January 21, 2022, after completing the 2021 work year and doing everything necessary to earn his annual bonus, Plaintiff announced his resignation, effective February 4, 2022. Am. Compl. ¶ 18. At the time of his resignation, Plaintiff had no reason to believe that he would not receive his bonus for 2021 and was completely unaware of the requirement that he be employed on the date the bonus checks were presented. *Id.* Defendant failed and refused to pay Plaintiff his bonus for 2021. Am. Compl. ¶ 19. Defendant's only grounds for withholding Plaintiff's bonus was that Plaintiff was not employed on the date that Defendant made bonus payments. *Id.*

Defendant claimed that it had modified the AZIP to require Plaintiff to be employed at the time bonus payments were made, but Plaintiff was never informed of any such change. *Id.* Had Plaintiff been alerted to this change in the plan requirements, he would have adjusted his start date with his new employer so that he could receive his 2021 bonus prior to departing. *Id.*

Prior to 2021, at least two of Plaintiff's subordinate employees received full bonus payouts even though they voluntarily left Defendant's employ prior to the date on which bonuses were paid. Am. Compl. ¶ 20. Specifically, Naomi Liang resigned in January 2019 and Matilde Saggese resigned in January 2021. *Id.* Both Ms. Liang and Ms. Saggese received their bonus awards for the year prior to the departures despite having resigned months prior to the bonus payout date. *Id.* Plaintiff knew Ms. Liang and Ms. Saggese received their bonuses because he was involved in the process of determining their bonus amounts. Am. Compl. ¶ 21. Additionally, both employees had specifically asked Plaintiff if they would receive their bonuses notwithstanding that they were resigning. *Id.* Plaintiff, in both instances, contacted Defendant's Human Resources ("HR") department and was advised that both employees would receive their bonuses. *Id.* Because Plaintiff knew that these employees had received bonuses despite resigning prior to bonus payout, he had no reason to suspect that he would not receive his 2021 bonus, despite his resignation prior to March 2022. Am. Compl. ¶ 22. Plaintiff knew that this was Defendant's historical policy, and Plaintiff was never advised of any changes to this policy. *Id.*

After announcing his resignation, Plaintiff sought confirmation from Dustin Simon, Defendant's HR Director for Oncology, that he would receive his 2021 bonus. Am. Compl. ¶ 23. Mr. Simon advised Plaintiff that, notwithstanding Defendant's historical record of paying bonuses to departed employees under the AZIP, Plaintiff's bonus would not be paid. *Id.* Mr. Simon further stated that the AZIP had been changed in 2021 – without any notice to Plaintiff – to require

continued employment to receive bonus payments.  *Id.*  Plaintiff protested that he had received no communication regarding this change and was completely unaware of it.  *Id.*  Mr. Simon acknowledged that Defendant had not communicated this key change to the AZIP.  *Id.*

Moreover, after announcing his resignation, Plaintiff was immediately offboarded because of the competitive nature of his position.  Am. Compl. ¶ 24.  This included being cut off from the AstraZeneca network and computer system which prevented Plaintiff from accessing internal AstraZeneca documents, including the AZIP.  *Id.*  He was not advised that the AZIP was modified to require him to be employed on the bonus payout date until *after* he was told he would be offboarded.  *Id.*  Had Defendant advised Plaintiff of this change previously, he would have extended his employment until after the March 15, 2022 payout date to ensure receipt of his 2021 bonus.  *Id.*  Defendant never advised Plaintiff that he could remain employed until the bonus payout date and, because he was immediately offboarded, he was not given the option or opportunity to change his departure date even after being informed of the change to the AZIP.  Am. Compl. ¶ 25.

## <u>LEGAL STANDARD</u>

Leave to amend should be freely given absent a compelling or glaring reason not to do so.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should feely give leave when justice so requires.").  A requested amendment should be denied only when the opposing party has demonstrated prejudice, bad faith, or futility of the amendment.  *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.").

A proposed amendment is *not* futile where it meets the standards of Fed. R. Civ. P. 12(b)(6).  *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019).  To state a claim upon which

relief can be granted under Rule 12(b)(6), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating whether the Rule 12(b)(6) standard is met, "[t]he court accepts the well-pled allegations of the complaint as true and construes all facts and reasonable inferences most favorably to the plaintiff." *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, Civ. No. PX-19-00407, 2020 U.S. Dist. LEXIS 47337, at *13 (D. Md. Mar. 17, 2020).  A complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.      THE AMENDED COMPLAINT STATES A CLAIM FOR QUANTUM MERUIT - UNJUST ENRICHMENT

Plaintiff's Amended Complaint states a claim for quantum meruit – unjust enrichment because Plaintiff conferred a benefit upon Defendant with Defendant's knowledge and Defendant accepted that benefit under circumstances which make it inequitable for Plaintiff to remain uncompensated for the value of his services.

"Unjust enrichment is the unjust retention of a benefit to the loss of another or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Owens v. Sheffel*, Civ. No. 24-C-19-000296, 2021 Md. App. LEXIS 38, at *8 (Ct. Spec. App. Jan. 22, 2021).  Unjust enrichment is a "legal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *AAC*

*HP Realty, LLC v. Bubba Gump Shrimp Co. Rests.*, 219 A.3d 99, 104 (Md. Ct. Spec. App. 2019).

As the Court stated in its prior holding in this action:

> To recover under a quasi-contractual quantum meruit theory, which is identical to unjust enrichment, a plaintiff must allege:
>
> (1) A benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

ECF 20 at 15 (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) and *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002)).

Here, Defendant argues only that Plaintiff did not confer a benefit on Defendant beyond what he was contracted to provide.  Def's Opp'n at 8-11.  First, Plaintiff did confer a benefit on AstraZeneca through his excellent work for the company, including working long hours and weekends.  Am. Compl. ¶¶ 15-17. Defendant argues that Plaintiff has not pled facts "showing the defendant was enriched as a result of circumstances, such as fraud or misrepresentation, that might make it inequitable for the company to retain the value of [Plaintiff's] services without paying for them."  Def's Opp'n at 8-9.  Defendant is incorrect.  While "fraud or misrepresentation" are *not* elements of unjust enrichment, and Plaintiff is not required to so demonstrate, the Amended Complaint nevertheless contains details of Defendant's fraud and misrepresentations.[1]  Indeed, Defendant represented to Plaintiff that he would receive a bonus if he fulfilled the conditions necessary to receive such bonus under the AZIP.  Plaintiff fulfilled the conditions set forth in the AZIP that Defendant provided him but was unjustly denied a bonus.  Defendant made Plaintiff

---

[1] Plaintiff's Amended Complaint also includes two separate causes of action alleging constructive fraud and negligent misrepresentation and provides substantial factual details related each.

eligible for a bonus award under the AZIP to entice him to confer benefits upon Defendant beyond what was contemplated by his employment agreement.  Plaintiff did, in fact go above-and-beyond in his work for Defendant with the expectation that he could meet the requirements to receive a bonus under the AZIP.  Am. Compl. ¶¶ 13-15.

After presenting the AZIP to Plaintiff, Defendant changed its material terms without notifying Plaintiff.  Am. Compl. ¶¶ 24-26.  Plaintiff conferred substantial benefit upon Defendant with the expectation that he would be fairly compensated for his work in accordance with the AZIP.  Because AstraZeneca unilaterally changed material terms of the AZIP without notice to Plaintiff, it would be inequitable for AstraZeneca to accept Plaintiff's work, performed with the expectation that he would receive a bonus under the prior version of the AZIP, and deny him a bonus for the arbitrary reason that he was not employed on the bonus payment date.

To support its argument, Defendant relies upon *Makowski v. Bovis Lend Lease, Inc.*, No. RDB-10-1844, 2011 U.S. Dist. LEXIS 27883 (D. Md. Mar. 17, 2011).  Such reliance is misplaced, as *Makowski* actually bolster's Plaintiff's argument.  In that case, the employee brought an unjust enrichment claim seeking recovery of a client funded bonus, an annual bonus, and severance pay. *Id*. at *29.  While the court dismissed the employee's unjust enrichment claims as to the annual bonus and severance pay, it did so only because the employee did not allege "that he conferred any benefit upon [the employer] specific to these two payments."  *Id*.  at 30.  With respect to the client funded bonus, however, the employee alleged, like Dr. Lanasa does here, "that he worked hundreds of hours of overtime and weekend hours . . . with the expectation of receiving his bonus." *Id*. at 29-30.  This Court held that "[t]hese allegations are sufficient to allege that Makowski conferred a benefit on [defendant], which it had knowledge of, and that its acceptance of such bonus under such circumstances is inequitable."  *Id*. at 30.

Defendant also relies on *Blanch v. Chubb & Son, Inc.*, Civ. No. CCB-12-1965, 2012 U.S. Dist. LEXIS 160363 (D. Md. Nov. 8, 2012).  Def's Opp'n at 10.  Such reliance is misplaced.  In *Blanch*, the plaintiff's unjust enrichment claim was dismissed because plaintiff did not plead any facts in support of his claim and instead "merely recite[d] the elements of the claim and conclusions of law."  *Id.* at *15.  Here, unlike in *Blanch*, Dr. Lanasa has alleged ample facts to support his unjust enrichment claim, as set forth in the Complaint and discussed above, including facts related to the long hours he worked, including frequent nights and weekends, which were not contemplated by his employment agreement.  Am. Compl. ¶¶ 15, 17.

Moreover, Defendant's argument that Plaintiff was exempt from overtime wages misses the mark.  *See* Def's Opp'n at 9-10.  Plaintiff has not asserted an overtime claim and this Court has already held that Plaintiff's withheld bonus was not a wage.  To the contrary, Plaintiff's allegations related to the long hours he worked demonstrates the extent to which he went above and beyond in his employment.  AstraZeneca enticed Plaintiff to work these long hours under the guise that he would receive a bonus in return for his extra efforts which were not compensated by his salary.  Indeed, the discretionary nature of an award under the AZIP demonstrates that Defendant's intent was to encourage Plaintiff to log extra hours and perform that extra work so that he could receive additional compensation.  While the amount of the award is largely discretionary, it is unjust for Defendant to set forth parameters under which Plaintiff would be entitled to receive a bonus, change those parameters with no notice to Plaintiff, and then deny Plaintiff a bonus for failing to follow requirements about which he was completely unaware.

Accordingly, Plaintiff's proposed Amended Complaint states a claim for quantum meruit – unjust enrichment upon which relief can be granted and is, therefore, not futile.

**II.   PLAINTIFF'S CLAIM FOR QUANTUM MERUIT – IMPLIED IN FACT CONTRACT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND IS NOT BARRED BY THE COURT'S PRIOR HOLDING**

Defendant argues that Plaintiff's claim for quantum meruit – implied-in-fact contract is futile because it is barred by the Court's prior holding and fails to state a claim under Rule 12(b)(6). Opposition at 11.  As set forth below, Plaintiff's claim is sufficiently pleaded to survive a motion to dismiss and is not barred by the Court's prior holding.

**A. Plaintiff's Quantum Meruit – Implied-in-Fact Contract Claim States a Claim Upon Which Relief Can Be Granted**

Plaintiff's claim for quantum meruit – implied in fact contract is not futile because Plaintiff has sufficiently pleaded facts to demonstrate the existence of an implied contract.  The Maryland Court of Special Appeals has explained that:

> An implied-in-fact contract is a "true contract" and "means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words." Implied-in-fact contracts are "dependent on mutual agreement or consent, and on the intention of the parties; and *a meeting of the minds is required*.

*Mohiuddin v. Doctors Billing Mgmt. Sols.*, 196 Md. App. 439, 447-48 (2010) (quoting *Mogavero v. Silverstein*, 142 Md. App. 259, 275 (2002)) (emphasis in original).

Vol. 1, Williston on Contracts, § 1.5, pp. 20-21, by Richard A. Lord (1990), also describes an implied-in-fact contract:

> The term implied or inferred contract, also sometimes called an implied in fact contract, refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. Despite the fact that no words of promise or agreement have been used, such transactions are nevertheless true contracts, and may properly be called inferred contracts or contracts implied in fact.

An implied-in-fact contract "arises where plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefore, and defendant, knowing such circumstances, avails himself of [the] benefit of those services."  *Cnty. Comm'rs of*

*Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 n.6 (Md. 2017).   The existence of an implied-in-fact contract "*is proved through circumstantial evidence*."  *Macsherry v. Sparrows Point, LLC*, Civ. No. ELH-15-22, 2017 U.S. Dist. LEXIS 122153, at *77 (D. Md. Aug. 3, 2017) (quoting *Slick v. Reinecker*, 839 A.2d 784, 787 (Md. Ct. Spec. App. 2003)) (emphasis in original).

Here, the allegations in Plaintiff's Amended Complaint demonstrate that an implied-in-fact contract existed between the parties.  Defendant agreed to make Plaintiff eligible for an annual bonus in any calendar year in which Plaintiff provided services to Defendant.  Am. Compl. ¶ 39. This implied contract did not require Plaintiff to remain employed until the bonus was actually paid. *Id*.  As a result of this implied contract, Plaintiff provided Defendant with substantial benefits for which he was not compensated by his salary alone.  Am. Compl. ¶¶ 41-42.  Indeed, Plaintiff received a bonus award in each year of his employment prior to 2021.  Am. Compl. ¶¶ 8, 16.

*Gordon v. Serv. Of Am.*, 120 F.3d 261, 1997 U.S. App. LEXIS 18836 (4th Cir. July 23, 1997), relied upon by Defendant, is easily distinguishable from the instant case.  There, the employees sued their employer after they were terminated before bonuses were paid and the bonus plan required continued employment.  *Id*. at 2-3.  *Gordon* is inapposite to the instant case because it includes no allegations that the employer modified the bonus plan without notice to the employees.

Accordingly, Plaintiff's Amended Complaint states a claim for quantum meruit – implied-in-fact contract.

### B.  Plaintiff's claim for Quantum Meruit – Implied-In-Fact Contract is Not Barred by The Court's Prior Holding

Defendant argues that Plaintiff's claim for quantum meruit – implied-in-fact contract is foreclosed by the Court's prior holding that Plaintiff "was not promised a bonus in exchange for

10

his work." Def's Opp'n at 12.  The Court's prior holding, however, was limited to an analysis of whether there was a *written* agreement between the parties that entitled Plaintiff to receive a bonus. Specifically, the Court evaluated the language of the various employment agreements and the AZIP and determined that based on those terms, there was no promise to pay Plaintiff his bonus.  ECF 20 at 11-14.  Moreover, the Court actually distinguished Plaintiff's breach of contract argument from arguments made in *In re National Energy & Gas Transmission, Inc.*, 351 B.R. 323, 331-32 (Md. Bnkr. 2006), where there was no written contract.  ECF 20 at 10.  Indeed, the Court's prior holding did not analyze whether the parties "had a contract that can be seen in their conduct rather than in a specific set of words."  *See Mohiuddin*, 196 Md. App. at 447-48.

Accordingly, Plaintiff's proposed amendment to add a claim that an implied-in-fact contract existed is a separate legal theory that has not previously been decided by the Court.

## III. PLAINTIFF'S CLAIM FOR CONSTRUCTIVE FRAUD IS NOT FUTILE BECAUSE STATES A CLAIM AND IS NOT BARRED BY THIS COURT'S PRIOR HOLDING

Defendant argues that Plaintiff's cause of action for constructive fraud is futile on two grounds: (1) that it fails to state a claim upon which relief can be granted; and (2) that it is barred by this Court's prior holding.  For the reasons stated below, each of these arguments fails.

### A. Plaintiff's Amended Complaint States a Claim for Constructive Fraud

Defendant argues that Plaintiff "cannot establish [constructive fraud] for the simple fact that he has not and cannot allege that AztraZeneca owed him a legal or equitable duty to pay him a bonus or inform him of changes to the AZIP."  Def's Opp'n at 13.  In fact, Plaintiff's Complaint

states a claim for constructive fraud because it sufficiently alleges that Defendant owed him a duty of care under Maryland law.[2]

Constructive Fraud requires showing: (1) the existence of a legal or equitable duty; (2) a breach of that duty; and (3) conduct which deceives or violates a confidence or injures the public interest. *Scheve v. McPherson*, 44 Md. App. 398, 406 (Ct. Spec. App. 1979). Defendant argues unpersuasively that Plaintiff has not pleaded sufficient allegations to demonstrate that it owed Plaintiff a legal or equitable duty. Opposition at 13. "Although there is no precise formula for determining the existence of a duty of care between two parties, a plaintiff who claims economic loss from misrepresentation must show an "intimate nexus" between the two parties."[3] *Rose v. Harloe Mgmt. Corp.*, Civ. No. GLR-16-761, 2017 U.S. Dist. LEXIS 6560, at *16 (D. Md. Jan. 17, 2017) (citing *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000)) (internal brackets and quotation marks omitted). Such an intimate nexus exists "between parties who have contemplated a long-term relationship." *Id.*

In analyzing whether an intimate nexus exists, "courts have also considered whether the party making the alleged misrepresentation had exclusive control over material information necessary for the other party to understand the situation." *Id.* (quoting *Odyssey Travel Ctr. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 628 (D. Md. 2003)) (internal brackets and quotation marks omitted). In *Griesi v. Atl Gen. Hosp. Corp.*, for example, the court placed significant emphasis on the fact that the employer maintained exclusive control over vital job information. 756 A.2d 548,

---

[2] In fact, Defendant has not cited a single Maryland authority in support of its contention that it did not owe Plaintiff a legal or equitable duty. Def's Opp'n at 15 (relying on cases analyzing Nevada, California, Indiana, New York, and Iowa law).

[3] The analysis for determining whether Defendant owed a duty to Plaintiff is the same for Plaintiff's constructive fraud and negligent misrepresentation claims. *Rose v. Harloe Mgmt. Corp.*, Civ. No. GLR-16-761, 2017 U.S. Dist. LEXIS 6560, at *16 (D. Md. Jan. 17, 2017).

556 (Md. 2000). The *Griesi* court further stated that "an employer reasonably should foresee that negligent misrepresentation of employment information may result in economic harm . . ." *Id*.

As stated above, Defendant owed a duty to Plaintiff and Plaintiff's constructive fraud claim is not futile.

### B. Plaintiff's Constructive Fraud Claim is Not Barred by the Court's Prior Holding

Plaintiff's constructive fraud claim is not barred by this Court's prior holding because the Court has not ruled on whether Defendant owed Plaintiff a duty within the context of constructive fraud. The Court stated that Defendant did not owe Plaintiff a duty of good faith and fair dealing within the context a contract that leaves "decisions absolutely to the uncontrolled discretion of one of the parties." ECF 20 at 14.

Contrarily, Plaintiff's claim for constructive fraud alleges that Defendant had a duty to deal with Plaintiff in good faith with respect to the terms of his compensation – regardless of whether a contract existed. *See Rose*, 2017 U.S. Dist. LEXIS 6560, at *16. Accordingly, no holding has been made with respect to Plaintiff's constructive fraud claim and the claim is not barred.

### IV. PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION IS NOT FUTILE BECAUSE THE AMENDED COMPLAINT CONTAINS SUFFICIENT FACTUAL ALLEGATIONS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff's cause of action for negligent misrepresentation is not futile. To state a claim for negligent misrepresentation, a complaint must plead that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused

by the defendant's negligence.  *Premium of Am., LLC v. Sanchez*, 73 A.3d 343, 352-53 (Md. Ct. Spec. App. 2013) (quoting *Walpert v. Katz*, 762 A.2d 582, 588 (Md. 2000)).  Plaintiff has sufficiently pleaded all five elements to state a claim for negligent misrepresentation as set forth below.

### A. Defendant Owed a Duty to Plaintiff and Negligently Failed to Notify Him of Changes to the AZIP

Defendant owed a duty of care to Plaintiff with respect to his compensation.  "There is no precise formula for determining the existence of a duty of care between two parties."  *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000).  In determining whether a duty of care exists, the Maryland Court of Appeals has "endorsed an analytical approach that encompasses at least two major assessments: examining the nature of legal relationship between the parties and the likely harm that results from a party's failure to exercise reasonable care within that relationship."  *Id.* (citing *Jacques v. First Nat'l Bank*, 515 A.2d 756, 759 (Md. 1986)); *see also Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 456 (Md. 2017) (stating that Maryland courts "consider the closeness of the relationship between the parties—especially one party's reliance on the other party's exercise of due care—when determining whether there is an intimate nexus that would support finding a duty of care.").

Employer-Employee relationships give rise to the intimate nexus required to create a duty of care. *Mahoney v. iProcess Online, Inc.*, Civ. No. JKB-22-0127, 2022 U.S. Dist. LEXIS 225218, at *15-16 (D. Md. Dec. 12, 2022) (citing *Abercrombie v. Nationwide Mut. Ins. Co.*, 999 F. Supp. 660, 663 (D. Md. 1998), *aff'd*, 168 F.3d 481 (4th Cir. 1999) (stating "Maryland clearly holds that contractual privity, such as that created by a contract of employment, creates a sufficiently 'intimate nexus' to sustain the tort of negligent misrepresentation."); and *Amenyah v. Randolph Hills Nursing Care, Inc.*, Civ. No. TDC-15-3062, 2016 U.S. Dist. LEXIS 82389, at *15-16 (D.

Md. June 23, 2016) (finding that plaintiffs sufficiently alleged a nexus where "[t]he alleged statements related to Plaintiffs' future employment and benefits, which any employer would understand to be a serious matter for employees.")); *see also Smith v. Integral Consulting Servs., Inc.*, No. DKC-14-3094, 2016 U.S. Dist. LEXIS 114692, at *6 (D. Md. Aug. 26, 2016) ("Maryland recognizes negligent misrepresentation claims in the context of an at-will employment relationship."). In *Mahoney*, for example, three plaintiffs brought a negligent misrepresentation claim against their employer alleging that their employer failed to deposit 401(k) matching funds into their accounts. *Mahoney*, 2022 U.S. Dist. LEXIS 225218, at *2. This Court held that the employer-employee relationship was sufficient, on its own, to allege an "intimate nexus" existed between the parties. *Id*. at 16.

Defendant argues unpersuasively that "Maryland law does not recognize a negligence claim arising from the failure to pay wages." Def's Opp'n at 17. Importantly, however, this Court has already decided that Plaintiff's bonus did not qualify as wages under the Maryland law. ECF 20 at 11 ("The bonus Lanasa seeks does not constitute a wage under the MWPCL."). Similarly, Defendant argues, unsupported, that "Maryland law has not recognized a duty of employers to pay them wages if they do not communicate to current at-will employees changes to a fully discretionary bonus plan." Def's Opp'n at 17. The Maryland Court of Appeals has held, however, that "a fragmentary representation [of an employer] can be rendered misleading by virtue of material facts not disclosed." *Lubore v. RPM Assocs.*, 674 A.2d 547, 561 (Md. 1996).

Defendant's similar argument that an "affirmative false statement" is required to plead negligent misrepresentation is also incorrect. In *Lubore*, the court stated that a claim of negligent misrepresentation arises where an employer makes representations that become "materially misleading by virtue of material facts that [the employer] negligently failed to disclose." *Id*. Here,

like in *Lubore*, Defendant failed to disclose material facts – that it made changes to the AZIP – that caused Plaintiff to be materially misled as to the requirements he needed to fulfill to remain eligible for a bonus.

Defendant also argues that Maryland courts "often reject negligent misrepresentation claims when a plaintiff's theory rests on statements made after the parties reached their contract." Def's Opp'n at 17 (internal quotation marks omitted).  This argument must also fail because, as this Court has already held, there was no written contract between the parties. ECF 20 at 14.

Finally, Defendant's argument that "predictive statements of future events" cannot support a claim for negligent misrepresentation is rebutted by the very case Defendant cites in support – *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1064 (Md. Ct. Spec. App. 2002).  In *Cooper*, the court specifically stated that Maryland courts "have recognized the difference between a promise of future events and an estimate by one knowledgeable in a particular field.  In the latter situation, ***redress may be had for representations as to future facts and not merely as to past or existing facts.***"  *Id.* (quoting *Ward Dev. Co. v. Ingrao*, 493 A.2d 421, 427 (Md. Ct. Spec. App. 1985)) (emphasis in original).  The *Cooper* court also noted "that ***courts have been increasingly willing to hold predictive statements material where the circumstances indicate to the addressee that the speaker has a factual basis for his predictions so that the existence of facts is implied by the representations.***"  *Id.* (quoting *Ward*, 493 A.2d at 427) (emphasis in original).  Here, like in *Cooper*, Defendant held all the knowledge regarding the circumstances under which Plaintiff could receive a bonus, but failed to disclose those facts to Plaintiff.  *See Rose*, 2017 U.S. Dist. LEXIS 6560, at *16.

*Hale Trucks of Md., LLC v. Volvo Trucks N. Am., Inc.*, 224 F. Supp. 2d 1010 (D. Md. 2002), cited by Defendant, is also unhelpful to Defendant.  In that case, this Court drew a distinction

between a "misrepresentation" and a "promise." *Id*. at 1031-32. The Court rightly stated that a promise is not usually subject to a claim for negligent misrepresentation because a promise "is the domain of contract." *Id*. Here, as already stated, the Court has already held that there was no written contract between the parties. The AZIP, therefore, was not a promise or prediction in this context, but rather a representation of the circumstances under which Plaintiff would receive a bonus.[4]

### B. Defendant Intended Plaintiff to Act Upon Its Representation

The Amended Complaint alleges that Defendant "intended that Plaintiff would rely on [Defendant's] statement [regarding the AZIP] and attempt to meet or exceed Defendant's expectations so that he could receive his full target bonus." Am. Compl. ¶ 56. Plaintiff further alleges that "Mr. Simon acknowledged that Defendant had not communicated to Plaintiff this key change to the AZIP," and Plaintiff was immediately offboarded upon giving his notice of resignation and not given any opportunity to extend his employment until the bonus payout date. Am. Compl. ¶¶ 23-25.

Viewing these facts in the light most favorable to Plaintiff, as the Court must at this stage, it is reasonable to conclude that Defendant intended Plaintiff to rely on the AZIP. Indeed, Defendant's brief acknowledges that Defendant "implemented the AZIP, in part, to attract and *retain* employees such as Plaintiff." Def's Opp'n at 19. Clearly, Defendant intended Plaintiff to

---

[4] In making this argument, Defendant cites to Paragraph 45 of the Amended Complaint which alleges that the parties "mutually agreed and assented that Plaintiff would be entitled to a bonus award." Opposition at 18. Paragraph 45 falls under Count II of Plaintiff's Amended Complaint which alleges an implied in fact contract. Plaintiff is entitled to allege alternative causes of action and does not allege the existence of a contract for the purposes of Count IV for negligent misrepresentation.

rely on the AZIP.  Crucially, however, Defendant, with the intent that Plaintiff would rely on the AZIP, made material changes thereto that altered the requirements for Plaintiff to receive an award.

### C. **Defendant Had Knowledge that Plaintiff Would Rely on Prior Versions of the AZIP and Suffer Harm**

As discussed in Section IV.B., *supra*, Defendant had knowledge that Plaintiff would rely on the AZIP and, in fact, intended him to do so.  Defendant had full knowledge of that a material change to the AZIP requiring continued employment until the bonus payout date would cause loss to Plaintiff if relied upon the prior version.  Indeed, viewing the facts in the light most favorable to Plaintiff, the material change in the AZIP was made for the sole purpose of ensuring that Defendant would not pay bonuses to employees who resigned prior to the bonus payout date.  Moreover, Defendant knew or should have known that failure to notify employees of these modifications would result in employees relying on the prior version of the AZIP.

### D. **Plaintiff Justifiably Resigned His Employment With the Expectation He Would Receive a Bonus**

As a preliminary matter, whether Plaintiff's reliance on Defendant's representations and omissions was reliable is reserved for the trier of fact to determine.  *Fessler v. IBM*, 959 F.3d 146, 154 (4th Cir. 2020) (citing *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 834 (4th Cir. 1999)).  Nevertheless, Plaintiff justifiably relied on the prior version of the AZIP because he was never notified of changes to the AZIP.

*Meerkreebs v. Astor & Sanders Corp.*, Civ. No. PG-17-695, 2018 U.S. Dist. LEXIS 37886 (D. Md. Mar. 7, 2018), cited by Defendant, is instructive.  There, the plaintiff advised the defendant that he would accept employment only under certain conditions.  *Id*. at *1.  The defendant agreed to plaintiff's terms, but the parties did not memorialize these terms in writing.  *Id*.  Three months later, plaintiff signed an offer letter that omitted the terms previously agreed upon.  *Id*. at *1-2.

18

Shortly after plaintiff began his employment, defendant "reneged on some of the terms they agreed to as conditions of [plaintiff's] employment." *Id*. at 2.  This Court held that plaintiff's reliance on the company's prior oral promises was reasonable because they were not contradicted by the written offer letter.  *Id*. at *16-17.  Here, like in *Meerkreebs*, Plaintiff reasonably relied on the written representations made by Defendant concerning bonus payments because Plaintiff was never notified of changes to the AZIP.  Moreover, Defendant had followed the prior version of the AZIP in all prior years of Plaintiff's employment, including by making bonus payments to multiple employees who resigned prior to the bonus payout date.  Am Compl. ¶¶ 20-22.

Similarly, in *Smith v. Integral Consulting Servs.*, the employee accepted an offer of employment with a government contractor.  2016 U.S. Dist. LEXIS, at *3.  Shortly thereafter, the defendant rescinded its offer because the government had not approved the plaintiff to work on the relevant contract.  *Id*. at *9.  This Court wrote that the "essence" of a negligent misrepresentation claim is whether the employer "failed to exercise reasonable care in communicating information to [the employee] that was material to his business decision."  *Id*. at *27.  The court stated that the employer's misrepresentation was "that its offer was without contingency."  *Id*. at *28.  Here, like in *Smith*, AztraZeneca failed to exercise reasonable care in communicating the terms of the AZIP to Plaintiff, who was unaware of any changes.  Like the employee in *Smith*, Plaintiff was never notified of an important contingency – that he must remain employed until the bonus was paid.

### E.  Plaintiff Suffered Damages Proximately Caused by Defendant's Negligence

Preliminarily, "proximate cause is ordinarily a question of fact for the jury."  *Miller v. Charles E. Smith Mgmt., Inc.*, 1999 U.S. Dist. LEXIS, at *9 (4th Cir. Jan. 26, 1999).  Nevertheless, Defendant's negligence proximately caused Plaintiff's damages.  Defendant curiously argues that

"Plaintiff's purported injury stemmed from his resignation prior to March 2022. Opposition at 21-22. Here, however, Plaintiff alleges that he would not have resigned prior to March 2022 had Defendant notified him of the changes to the AZIP. This well-pleaded allegation, if proven true, would allow a finder of fact to conclude that Defendant's actions proximately caused Plaintiff's injuries. *See id*.

## CONCLUSION

For the reasons stated herein and in Plaintiff's Motion for Leave to File an Amended Complaint, Plaintiff respectfully requests that this Court GRANT his Motion for Leave and docket his Amended Complaint.

Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

By:      __/s/ Philip B. Zipin_____
Philip B. Zipin, Bar No. 03932
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9373 (ph)
(240) 839-9142 (fax)
pzipin@zagfirm.com

Anthony G. Bizien, Bar No. 20322
45 Essex Street, Suite 3 West
Hackensack, NJ 07601
(301) 587-9373 (ph)
(240) 839-9142 (fax)
abizien@zagfirm.com

*Counsel for Plaintiff*

20

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on this 23rd day of June 2023, a true and correct copy of the foregoing was served upon all counsel of record via this Court's ECF system.

_/s/ Anthony G. Bizien_____
Anthony G. Bizien